In re Ronald D. OLSON and E. Sue Olson, Debtors.

Ronald D. OLSON and E. Sue Olson, Plaintiffs,

v.

McFARLAND CLINIC, P.C., Defendant.

Bankruptcy No. 82–03146.
Adv. No. 82–0823.

United States Bankruptcy Court, N.D. Iowa.

March 21, 1984.

Thomas C. Wynia, Story City, Iowa for plaintiffs.

B. Joan White and Bruce P. Bickel, Amis, Iowa, for defendant.

Findings of Fact, Conclusions of Law, and ORDERS re Application for Contempt Order Under 11 U.S.C. §§ 362 and 524

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court is an Application for Order to Show Cause in re Contempt and Complaint for Damages filed by Ronald D. and E. Sue Olson (Debtors) and against McFarland Clinic P.C. (Defendant). The Court, being fully advised and pursuant to F.R.B.P. 7052, now makes the following Findings of Fact, Conclusions of Law and Orders.

■ The facts underlying the Application are not in dispute. On June 1, 1982, the Debtors filed a voluntary Chapter 7 Petition in this Court. On Schedule A–3, the Debtors listed the Defendant as a holder of a claim without priority. On June 18, 1982, the Clerk's office sent Notice to All Creditors including the Defendant regarding the Meeting of Creditors and the applicability of 11 U.S.C. § 362. On July 27, 1982, the Defendant via its Administrator sent a letter to the Debtors, the relevant portions of which provided:

> I wish to inform you that the ... McFarland Clinic ... will no longer be able to provide medical care to you and members of your family.

> This action has become necessary based on your failure to pay for the medical services provided by McFarland Clinic.... Since you have filed bankruptcy, I realize that we cannot legally pursue the collection of this account. However, we are willing to reinstate service if you wish to pay your account voluntarily.

Upon receipt of this letter, the Debtors subsequently sought medical services from the Defendant. When the Debtors arrived at the Defendant's premises, they were advised that no medical services would be provided unless the entire balance of the debt owed the Defendant be paid. Being thus unable to obtain care, the Debtors

proceeded to another physician and received treatment. It should be noted that at the time of the Debtors' visit, the Debtors offered to pay cash in advance of the medical services to be performed. This offer, however, was rejected by the Defendant. In the Application, the Debtors sought a finding that the Defendant's action violated 11 U.S.C. § 362 and 11 U.S.C. § 524, and requested an award of actual and punitive damages.

### I. *11 U.S.C. § 362*

In enacting § 362, Congress' intent was clear:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops *all collection efforts,* all harassment and all foreclosure actions.

H.R.Rep. No. 595, 95th Cong., 1st Sess 340 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6296. In particular, the legislative history accompanying § 362(a)(6) indicated that the section was purposed at "prevent[ing] creditors from attempting *in any way* to collect a prepetition debt." *Id.* at 342, U.S.Code Cong. & Admin.News 1978, at 6296. In its entirety, the section provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
>   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

Other courts faced with situations similar to the one at bar have found § 362(a)(6) violations. For example, in *In re Stephens,* 1 C.B.C.2d 420, 422 (Bkrtcy.N.D. Ohio 1980), the creditor refused to grant the debtor a new loan unless the debtor reaffirmed the pre-petition obligation. The court held that "the creditor ... by requesting a reaffirmation of the pre-bankruptcy debt as a condition precedent for the granting of [new] loan has violated section 362(a)(6)." Similarly, in *In re Green,* 15 B.R. 75, 78 (Bkrtcy.S.D.Ohio 1981), the creditor refused to reaffirm a secured loan without the debtor also reaffirming an unsecured loan. The *Green* court held that "[r]efusing to execute a reaffirmation agreement unless the dischargeable debt be paid is such an act which violates the statutory rights of the debtor." Likewise, it has been held that "government regulations that condition receipt by a debtor in bankruptcy of a service upon payment of a prepetition debt violates § 362(a)(6)." *In re Haffner,* 25 B.R. 882, 886 (Bkrtcy.N.D. Ind.1982); *see In re Heath,* 3 B.R. 351 (Bkrtcy.N.D.Ill.1980); *see also In re Howren,* 10 B.R. 303 (Bkrtcy.D.Kan.1980). Consistent with this latter series of cases, the court in *In re Lanford,* 10 B.R. 132, 134 (Bkrtcy.D.Minn.1981), held that a private college that refused to release a transcript until the student loan account has been brought current violated § 362(a)(6). Indeed, the *Lanford* court observed that "withholding of transcript serves no purpose but the collection of a debt."

Application of the above cases convinces this Court that the purpose behind the Defendant's July 27, 1982, letter to the Debtors was collection of a prepetition debt. While a literal reading of the letter reveals no direct effort at collection, the Defendant is not excused. To that end, the following observation in *In re Hix,* 13 B.R. 752, 754 (Bkrtcy.S.D.Ohio 1981), is instructive:

> If a cloak of respectability is donned as a guise to obviate a continual harassment of debtors, even after discharge, one of the major reforms incorporated in the 1978 Code will soon be emasculated.

Further, this Court finds that the Defendant is not committed to refusing services on the basis of nontainted reason. Clearly, the Defendant would not have refused services if the Debtors had paid the prepetition debt. Like *Lanford,* therefore, the withholding of services by the Defendant "serves no purpose but the collection of a debt." By using the refusal as a lever, Defendant was attempting to collect a prepetition debt.

In sum, this Court finds that the Defendant's letter to the Debtors constitutes an act to collect a claim against the Debtors that arose before the commencement of the case and thus violative of 11 U.S.C. § 362(a)(6). By so holding, this Court is not unmindful of the Defendant's assertion that the Bankruptcy Code may not be construed to compel the defendant to provide services to the Debtors. This Court agrees with the Defendant's assertion. Indeed, if the Defendant were to simply refuse service without any mention of the Debtors' bankruptcy filing, § 362 would not come into play. However, the Defendant's letter to the Debtors appears motivated by a desire to collect the pre-petition debt under the guise of termination of future services. Because § 362(a)(6) prohibits collection attempts *"in any way,"* the Defendant's action violated § 362(a)(6).

Turning to the incident during which the Debtors were refused medical services even though they tendered cash in advance of the services, the record is unclear as to the time the incident occurred. Assuming that the incident occurred before the entry of the Order of Discharge on August 17, 1984, it also constituted a violation of § 362(a)(6). Conceptually, it was no different than the letter sent to the Debtors. On the other hand, if the incident occurred after the entry of an Order of Discharge, no § 362 violation could be found. This is so because § 362(c)(2)(C) provides that the stay is terminated when the discharge has been granted. However, a post-discharge action while not violative of § 362 may run afoul of 11 U.S.C. § 524, to which we now turn.

II. *11 U.S.C. § 524*

■ 11 U.S.C. § 524(a)(2) provides:

A discharge in a case under this title ... operates as an injunction against the commencement or continuation of an action, ... or any act ... to collect, recover or offset any such debt as a personal liability of the debtor....

On August 17, 1982, an Order discharging the Debtors was published. At the very least, therefore, the Defendant had constructive notice of the discharge of the Debtors. As indicated earlier, if the second incident complained in the case at bar occurred after the entry of an Order of Discharge, the Defendant would have violated § 524(a)(2). By continuing to refuse treatment to the Debtors, the Defendant was engaging in efforts to collect a prepetition debt. Such a continuation is violative of § 524(a)(2). *See e.g., In re Holland,* 21 B.R. 681, 688–89 (Bkrtcy.N.D.Ind.1982).

III. *Sanctions*

■ Having concluded that the Defendant's actions constituted technical violations of 11 U.S.C. § 362 and § 524, the remaining question is what sanctions, if any, should be imposed. It is well settled that a willful violation of § 524 may constitute contempt. *E.g., In re Myers,* 18 B.R. 362 (Bkrtcy.E.D.Va.1982). Similarly, willful violations of § 362 are contemptuous. *E.g., In re Miller,* 22 B.R. 479 (Bkrtcy.D. Md.1982). In the case at bar, it is clear that the Defendant had actual knowledge of the provisions of § 362 and at least constructive knowledge of the provisions of § 524. While the Defendant's administrator testified that the Defendant had no intent to flaunt the bankruptcy laws, the most revealing evidence of intent is the letter and the refusal to provide service until the prepetition debt has been paid. Moreover, the record contains some testimony that the Defendant treats discharged debtors in the same manner as any other "non-paying" obligors. Such treatment clearly reveals a misconception of critical provisions of the Bankruptcy Code. A discharged debtor enjoys, for example, the benefit of 11 U.S.C. § 524. Further, a discharged debtor is entitled to a "fresh start." On the other hand, a "non-paying" obligor who has not petitioned for bankruptcy relief is not accorded the protection of § 524. By the same token, therefore, a creditor's treatment of a discharged debtor must conform to the provisions of the bankruptcy law. Indeed, to treat a discharged debtor and a "non-paying" obligor similarly would render bankruptcy relief

superfluous. To hold otherwise would be tantamount to ignoring the legal discharge granted the Debtors. This Court therefore concludes that there existed the requisite intent and willfulness such that the Defendant's actions should be sanctioned.

Last, while not essential to this Court's conclusion, the Defendant would be well advised to be apprised of 11 U.S.C. § 525, which provides:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title ....

Undoubtedly the literal language [1] in § 525 refers to a "governmental unit." Given the private nature of the Defendant's existence, § 525 appears inapplicable. However, relying on Congress' invitation that "[t]he courts will continue to mark the contours of the antidiscrimination provision in pursuit of sound bankruptcy policy," H.R. Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, 6323, *accord* 1 W. Norton, *Bankruptcy Law & Procedure* § 27.06, at 27–11 (1981), recent decisions have strongly suggested that § 525 should be construed to apply to private entities. *E.g., In re Green,* 29 B.R. 682, 686 (Bkrtcy.S.D.Ohio 1983) (private entity acting as "vicarious agent" of state; § 525 violated); *In re Parkman,* 27 B.R. 460, 462 (Bkrtcy.N.D.Ill. 1983) (where "actions of a private institution ... are really tools to collect a discharged debt ..., debtors are denied the fresh start contemplated by Congress"). Applying this policy-oriented approach to § 525, *see In re Rath Packing Co.,* 35 B.R.

615, 620 n. 11 (Bkrtcy.N.D.Iowa 1983), the Defendant's letter and refusal to provide services constituted the type of discriminatory treatment sought to be eradicated by Congress in enacting § 525. Such actions should therefore not be condoned.

IT IS THEREFORE ORDERED that:

1. The action of the Defendant in sending the letter to the Debtors and in refusing medical services until the pre-petition debts had been paid constituted violations of 11 U.S.C. §§ 362(a)(6) and 524(a)(2).

2. Within twenty (20) days of this Order, the parties may submit to this Court a proposed stipulation or agreement with respect to sanctions and/or damages to be imposed in this matter. If no stipulation or agreement can be reached, the Court will issue, under separate Order, a ruling with respect to sanctions and/or damages to be imposed.

3. The Application for Order to Show Cause and Complaint for Damages filed by the Debtors herein is sustained.

---

**1.** In *In re Neiheisel,* 32 B.R. 146, 161 (Bkrtcy.D. Utah 1983), the Court engaged in an extensive review of the "fresh start" policy and observed, with respect to § 525, that:

> [i]n the political give and taking surrounding the Bankruptcy Reform Act, many proposals to enhance the fresh start were lost to compromise, including proposals to ... extend by statute the prohibition of post-discharge discrimination to private parties.

In other words, there was support in Congress that § 525 should be extended to cover private as well as public entities.