In re MANSON BILLARD,
INC., Debtor.

In re MANSON REALTY
CORP., Debtor.

In re CHESTNUT TRUCKING
CO., Debtor.

MANSON BILLARD, INC., et
al., Plaintiffs,

v.

HOFFMAN INDUSTRIES
INC., Defendant.

MANSON BILLARD, INC., et
al., Plaintiffs,

v.

SINKING SPRING
FOUNDRY, Defendant.

Bankruptcy No. 85–00550 T.
Adv. Nos. 87–0098, 87–0116.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 25, 1988.

Robert H. Kauffman, George Shoop, Rhoda, Stoudt & Bradley, Reading, Pa., for debtors.

Earl T. Stamm, Peter E. Meltzer, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Hoffman Industries and Sinking Spring Foundry.

### MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

We now consider the Rule 12(b)(6) motions filed by Hoffman Industries, Inc. and Sinking Spring Foundry (collectively, "defendants") in the above-referenced adversaries, both of which request that we dismiss the complaints filed against them by Manson–Billard, Inc., et al. ("debtors") based on debtors' failure to state a claim upon which relief can be granted. This memorandum opinion outlines the basis upon which we deny both motions.

## I. RECORD DATES

The record discloses that an involuntary chapter 7 petition was filed against debtor [1] on February 15, 1985 ("involuntary date") by one petitioning creditor. Debtor filed a motion to dismiss, alleging that 11 U.S.C. § 303(b) required that three petitioning creditors join in the filing. After a full hearing, we took this matter under advisement. Before we could rule, debtor chose to avail itself of the protections of the Bankruptcy Code and filed a motion to convert the involuntary chapter 7 to a voluntary chapter 11 proceeding. On April 24, 1985 ("conversion date"), we signed an order authorizing the conversions and allowing debtor to operate its business as a debtor-in-possession.

On February 12, 1987, debtors filed the instant complaints to recover preferential and post-petition transfers.[2] In response, both defendants filed substantially identical motions to dismiss, to which debtors responded. The parties have briefed the issues.

In support of their motion to dismiss, defendants argue that the original involuntary was necessarily void because it was filed by an insufficient number of creditors. They conclude that the date of the conversion is the first date from which we must calculate the preference period. Thus, they argue that debtors' allegation of preferential transfers is fatally deficient under Fed.R.Civ.P. 12(b)(6) [3] because debtors used the wrong date to calculate the 11 U.S.C. § 547 preference period. Further, they suggest that debtors' allegation of 11 U.S.C. § 549 post-petition transfers must fail under the same sword because the complaints allege that the post-petition transfers occurred after the filing of the involuntary petition, which is not the same as after the "commencement of the case."

## II. OVERLAP PERIOD

■ The parties suggest that the one issue linking both of these cases at the present juncture is whether the date of the involuntary petition ("the involuntary") is the date of the "filing of the petition" for the purposes of § 547(b)(4)(A), which provides that the trustee may avoid "any transfer of an interest of the debtor in property—... made ... on or within 90 days before the date of the filing of the petition ..." 11 U.S.C. § 547(b)(4)(A). We think the real analysis is far simpler.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defense that a party has failed to state a claim upon which relief can be granted. As we have previously noted,

> A rule 12(b)(6) motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief, taking the allegations of the complaint as true, viewing them liberally, and giving the plaintiff the benefit of all inferences which fairly may be drawn therefrom.

*Fidelity Elec. Co., Inc. v. Wemmco (In re Fidelity Elec. Co., Inc.)*, 43 B.R. 385, 387 (Bankr.E.D.Pa.1984).

Consider now the relevant dates in this case. Debtors calculate the preference period from the date of the involuntary petition. Defendants argue that we should count the 90 day preference period back from the April 24, 1985 conversion. If we do this, suggest defendants, the preference

---

**1.** The involuntary petition was filed against Manson Billard, Inc. On May 3, 1985, Manson Realty Corp. and Chestnut Trucking Co. filed two separate, voluntary chapter 11 petitions. On May 30, 1985, we ordered that the three cases be substantively consolidated and jointly administered. For simplicity and clarity, all references in this memorandum will be to "debtors."

**2.** Debtors allege that defendant Hoffman received a preferential transfer totaling $34,601.35 and that defendant Sinking Spring received a preferential transfer in the amount of $62,-214.77. In Count II of these complaints, which allege transfers in violation of 11 U.S.C. § 549, debtors allege that Hoffman received $7,873.00 and that Sinking Spring received $2,963.05. Other than these differences, the complaints are substantially identical. We assume that the reference to "debtor" in paragraph 12 of each of these complaints is a typographical error and should read "defendant."

**3.** This rule is incorporated into the Bankruptcy Rules by B. Rule 7012.

period falls *after* the involuntary filing date used by debtors to calculate the preference period. A chart illustrates the fallacy of this argument:

| (90 DAYS PRIOR TO FEBRUARY 15TH INVOLUNTARY) | November 18, 1984 |
| (90 DAYS PRIOR TO APRIL 24TH CONVERSION) | January 24, 1985.... |
| | ..23 day overlap period |
| Date of INVOLUNTARY Ch. 7 | February 15, 1985.... |
| Date of CONVERSION to Ch. 11 | April 24, 1985 |

Using either the involuntary date or the conversion date to calculate the preference period, there is a 23 day slot covered by both "preference" periods.

■ The standard against which we must measure debtors' complaint is Rule 8(a)(2), which requires only a "... short plain statement of the claim showing that the pleader is entitled to relief." Fed.R. Civ.P. 8(a)(2). The new Federal Rules do not require the technically precise pleading that characterized the preceding era. *Crawford v. Merino (In re Merino)*, 69 B.R. 4, 5 (Bankr.D.Haw.1986). In effect, Fed.R.Civ.P. 8(a) tests the sufficiency of a Rule 12(b)(6) motion. *Stevenson v. Consumer Protections Services (In re Stevenson)*, 49 B.R. 914, 915 (Bankr.E.D.Pa.1985). The complaints state merely that a transfer occurred during the preference period. Since this short, plain statement[4] allows for the possibility that the preferential transfers occurred during the 23 day overlap period, it is irrelevant whether we use the involuntary or the conversion date as our starting point for calculating the preference period.[5]

Our conclusion on this point is buttressed by Rule 8(f) of the Federal Rules of Civil Procedure, which requires that all pleadings be construed so as to do substantial justice. As the Supreme Court stated:

> (t)he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957). We find that debtors have pled their claim of a § 547 violation sufficiently to withstand this Rule 12(b)(6) attack.

This overlap period analysis also impacts debtors' § 549 arguments. Debtors claim that post-petition transfers occurred between the date of the involuntary and the date of the conversion. The Code allows a trustee[6] to avoid a transfer of property occurring "... after the commencement" of the case. If this case commenced on the date of the involuntary, then debtor is correct that these were post-petition transfers. If it commenced on the date of the conversion, the payments may become additional § 547(b) preferential transfers. Since the date on which the case "commenced" will thus determine whether debtors proceed under both § 549 and § 547, or under § 547 alone, we must analyze the Code and relevant case law.

### III. LACK OF STANDING

■ Defendants argue that since the involuntary was fatally defective, we have no choice but to conclude that the conversion date is the date on which this case was commenced. This argument ignores the content and historical foundations of certain Code provisions. Rule 1011 now states that only the debtor in a case such as the instant may contest an involuntary

---

**4.** Debtors' "short plain statement" is somewhat vague. Vagueness is not prohibited, however. In fact, vagueness may make is more difficult to dismiss a case on a Rule 12(b)(6) motion. *See e.g., B.Z. Corp. v. Continental Bank, N.A. (In re B.Z. Corp.)*, 34 B.R. 546, 549 (Bankr.E.D.Pa. 1983).

**5.** The likelihood that debtors will be able to prove (assuming that we choose the conversion date as the key date) that the transfers occurred during the relatively short overlap period is not relevant. The rules are construed liberally and the likelihood of plaintiff's success is immaterial in a ruling on a 12(b)(6) motion. *Brandt–Airlines v. Long Island Trust Co. (In re Brandt Airlines)*, 69 B.R. 701, 708 (Bankr.E.D.N.Y. 1987).

**6.** Pursuant to 11 U.S.C. § 1107(a), a debtor in possession may exercise a trustee's § 549 powers.

petition.[7] As the Advisory Committee noted, "(t)he rule preserves the features of the former Act and the Code permitting no response by creditors to an involuntary petition against a partnership under Rule 1004(b)." Advisory Committee Note to Rule 1011. *See generally, Dunlop Tire and Rubber Corp. v. Earl's Tire Service (In re Earl's Tire Service, Inc.)*, 6 B.R. 1019, 1021–22, 6 B.C.D. 1205, 3 C.B.C.2d 205 (D.Del.1980). The rationale for this rule is sound. Congress was concerned:

> ... that a creditor's purpose in opposing an involuntary petition invariably was to protect a preference or to gain some other unfair advantage at the expense of other creditors, contrary to the Bankruptcy Act's policy of providing an equitable distribution of assets among all creditors.

*In re Earl's Tire Service*, 6 B.R. 1019, 1021.

As a result of these clear directives,

> (c)ourts faced with the issue have consistently held that similar collateral attacks by disgruntled creditors will not be permitted especially where, as here, the alleged jurisdictional defects in the involuntary petition are merely procedural and have been waived by the debtor's consent to the entry of an order for relief.

*Seidle v. Kwik Copy, Inc. (In re Belize Airways, Inc.)*, 18 B.R. 485, 488, 8 B.C.D. 1177 (Bankr.S.D.Fla.1982) (citations omitted).

In the highly analogous § 547(b)(4)(A) analysis in *Belize*, the court was called to address whether the preference period should be measured from (1) the date of the initial involuntary petition; (2) the date of the order entered when debtor consented to chapter 11 relief, or (3) the later date on which debtor converted from chapter 11 to chapter 7. *Id.* at 488. As in the instant case, defendants argued that the date on which the involuntary was filed could not be the controlling date because the involuntary had been filed by an insufficient number of creditors. The court held that the creditor-defendants lacked standing to attack the involuntary filing. *Id.* at 489. In a footnote, the court explained that even if the later chapter 11 consent date were used, the transfer would have occurred within the 90 day preference period. *Id.* at 489 n. 3.

In a similar case, a creditor filed an involuntary and the court entered an order for relief when debtor did not respond. *In re Earl's Tire Service, Inc.*, 6 B.R. 1019, 1020. A creditor then filed a complaint against debtor and the petitioning creditor, requesting either that the petition be dismissed for lack of the appropriate number of petitioning creditors, or the stay vacated. *Id.* The trustee moved to dismiss, alleging that the creditor lacked standing to raise the issue of the defective filing. The creditor argued that it was attacking the subject matter jurisdiction of the court, which the court could notice at any time during the proceedings. *Id.* The District Court affirmed the Bankruptcy Court's decision that the creditor lacked standing to challenge the filing of the involuntary. *Id.* at 1023.

Defendants place great weight on the fact that debtors have previously contested the validity of the involuntary petition under § 303(b), as though debtors waived both the right to convert and the right to now assert the validity of the involuntary petition.[8] The operative fact, however, is

---

**7.** Bankruptcy Rule 1011 reads in relevant part: (a) Who May Contest Petition. The debtor named in an involuntary petition or a party in interest to a petition commencing a case ancillary to a foreign proceeding may contest the petition. In the case of a petition against a partnership under Rule 1004(b), a nonpetitioning general partner, or a person who is alleged to be a general partner but denies the allegation, may contest the petition.
   B. Rule 1011(a).

**8.** Defendants' argument is further weakened by the fact that we would not necessarily have entered an order dismissing the case based on debtor's original motion to dismiss the involuntary. Under 11 U.S.C. § 303(c), creditors other than the original petitioning creditors may join in the petition and be treated as one of the original petitioning creditors. Indeed, bankruptcy judges have exercised their broad equitable power to allow these additional creditors to join in to cure a defective involuntary filing. *See* B. Rule 1003(b). *See also, In re Petralex,* 78 B.R. 738, 744 (Bankr.E.D.Pa.1987); *In re Elsub,* 66 B.R. 189 (Bankr.D.N.J.1986).

that debtors did not press the initial motion to dismiss and instead consented to the entry of an order for relief—under chapter 11. The right to convert is absolute. 11 U.S.C. § 706(a). *See also,* 11 U.S.C. § 706 Historical and Revision Notes. Any defect in the underlying filing was waived by the consent embodied in the decision to convert. *In re Belize,* 18 B.R. 485, 488.

■ We also observe that the clear wording of the Code suggests that the date of the filing of the involuntary controls both the calculation of the preference period and the determination of when a case "commences" under § 549. Since the essential question here is whether the conversion date is the appropriate choice, we turn to 11 U.S.C. § 348, entitled "Effect of Conversion," which provides:

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in *the date of the filing of the petition, the commencement of the case,* or the order for relief.

11 U.S.C. § 348(a) (emphasis added). The exceptions in § 348(b) and (c) do not apply in the instant case. The term "petition" as used in this section includes the date of the filing of an involuntary, which "commences" a case. 11 U.S.C. § 101(36). Thus, read together, § 101(36) and § 348(a) suggest that debtors' decision to convert did not change the date of filing or the date of commencement, both of which were the date on which the involuntary was filed. *Accord, In re Bullock,* 41 B.R. 637, 640 (Bankr.E.D.Pa.1984) (per former C.J. Goldhaber) (on conversion from chapter 13 to chapter 7, the date of filing relates back to

the date of the initial chapter 13 for the purpose of identifying property of the estate). *See generally, Rock River Production Credit Assoc. v. Langholf (In re Langholf),* 37 B.R. 414, 419 (Bankr.N.D.Ill. 1984) (date of initial filing key to determining whether wrongdoing "in or in connection with" case had occurred pursuant to 11 U.S.C. § 727).

We find that the case law supports this textual conclusion that the effective date is the date of the involuntary petition. Faced with this decision in interpreting different Code sections, many courts have chosen to follow § 348(a)'s strictures as to the effect of conversion. Indeed, in the only decision on the subject from this Court, we have held that § 348(a) controls our analysis of when particular property becomes property of the estate. *In re Bullock,* 41 B.R. 637, 640. Innumerable other decisions [9] are in accord. *See generally, Arkison v. Swift (In re Swift),* 81 B.R. 621, 622, 16 B.C.D. 1195, 1196 (Bankr.W.D.Wash.1987) (commencement date key to determining whether previous chapter 13 wage deductions are property of the chapter 7 estate); *In re Lepper,* 58 B.R. 896, 898, 14 C.B.C.2d 1090, Bankr.L.Dec. para. 71,057 (Bankr.D.Md. 1986); *In re McFadden,* 37 B.R. 520, 521 (Bankr.M.D.Pa.1984) (commencement date key to determining whether post-petition income was property of the estate after case converted from chapter 13 to chapter 7).

None of these cases deals with the peculiar factual situation involved in the instant involuntary and "conversion." Defendants have given us no reason, however, why we should not follow former Chief Judge Goldhaber's literal interpretation of § 348(a) in this situation. They cite two "contrary" cases which do not change our decision to follow Judge Goldhaber's lead.

---

**9.** Another interesting case involved a preference dispute between the trustee in a failed reorganization and the government, which had been paid over $500,000.00 in taxes by debtor two months prior to the filing of an involuntary. *Neuger v. United States of America (In re Tenna. Corp.),* 801 F.2d 819 (6th Cir.1986). The court was required to determine whether the government had received more than it would have received in a chapter 7 liquidation. 11 U.S.C. § 547(b)(5). The government argued that the correct time for making that determination was the date of the involuntary petition and the trustee argued that all events up until the date of the adversary filing should be considered. Both the Bankruptcy and the District Court held that the date of the adversary was the controlling date. The Sixth Circuit held that the controlling date was the date of the involuntary filing. *Id.* at 824.

Contrary cases can be distinguished because they embody a conflict between § 348(a) and other sections of the Code which are not applicable in the instant case. Section 348 provides that a converted case can be treated as arising on the date of filing of the petition. *See* discussion, *supra* at p. 773. Other sections of the Code, however, provide that the debtor or trustee has duties which arise on the date of filing, but which, on a practical or equitable[10] level, should not be deemed to arise until the subsequent conversion date.

This type of conflict between § 348 and other conflicting Code sections is highlighted in the cases cited by defendants. In one case, the court was called to decide at what point a debtor's right to specify his exemptions accrued. *In re Andreotti*, 16 B.R. 28, 5 C.B.C.2d 1146, Bankr.L.Dec. para. 68,490 (Bankr.E.D.Cal.1981). The debtor had been the subject of an involuntary petition, but before relief could be ordered, he made certain bank deposits and moved his place of residence to his trawler boat. *Id.* at 30. After the order for relief was entered, the debtor filed schedules claiming these items as exempt.

The question in *Andreotti* was whether a reading of § 303 and § 541 together required a holding that the exempt or non-exempt nature of property was established on the date the case was commenced or on the date of the involuntary. *Id.* The court focussed on § 303(f), which provides specifically that until an order for relief is entered, the debtor may continue to use and dispose of property as if no involuntary had been commenced. *Id.* at 31. This analysis of a debtor's post-petition rights has no impact, of course, on the instant pre-petition transfers. The emphasis on § 303(f) also has no significance on the instant post-petition transfers because § 303(f) merely

allows a debtor to operate. Section 303(f) does not state that the case does not "commence" until the order for relief is entered. In fact, the wording of § 303(f) suggests that the filing of the involuntary serves to "commence" the case.[11]

The policy arguments underlying the *Andreotti* decision are inapplicable in the instant case. The *Andreotti* court said that it would be inequitable to allow a voluntary debtor to plan out his exemptions in advance of the filing, yet to deny the involuntary debtor the chance to do the same by using the gap period to make these plans. *Id.* at 31. The equities cut the other way in the instant case. It would be inequitable to allow a creditor the right to determine whether his funds constituted a preferential transfer by collaterally attacking the filing of the involuntary at a late point in the case.

Finally, we are surprised that defendants cite *Andreotti* for the proposition that the rights of the parties do not become fixed until the order for relief has been entered. An examination of the *full* context of the passage quoted by defendants, *see* Defendant's Brief at 7, shows that the court was limiting its analysis to the particular statutory conflict in front of it:

> *Because of the significant change in bankruptcy law worked by Section 303(f) of the Code, the rights of the parties do not become fixed and the general estate of the debtor does not pass out of his hands at the time that the involuntary petition is filed. Rather, this phenomenon occurs at the time of the order for relief if such an order is granted.*

*Id.* at 31. (emphasis added)

Defendants also cite *Rock Hill National Bank v. York Chemical Industries, Inc. (In re York Chemical Industries, Inc.)*, 30

---

10. One court suggests that those courts which do not follow § 348(a) and instead conclude that the conversion date does not relate back to the date of an original filing "... base their conclusions upon policy arguments of equity and fairness rather than statutory construction." *In re Lennon*, 65 B.R. 130, 133 (Bankr.N.D.Ga. 1986) (and cases cited therein analyzing whether post-petition earnings are property of the estate in conversion situations).

11. The text reads as follows:
(f) Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property *as if* an involuntary case concerning the debtor *had not* been *commenced.*
11 U.S.C. § 303(f) (emphasis added).

B.R. 583 (Bankr.D.S.C.1983). Plaintiff had inadvertently terminated its security interest in debtor's property seventeen days after an involuntary petition under chapter 7 was filed against debtor. *Id.* at 585. Under 11 U.S.C. § 544(a)(1), the debtor in possession or trustee is given the status of a hypothetical lien creditor. The court was required to determine exactly when debtor acquired that hypothetical lien creditor status. In *York,* the debtor filed an answer to the involuntary chapter 7 petition and no order for relief was entered under chapter 7. Instead, the court entered an order that the case was pending under chapter 11. *Id.* at 585. Relying only on *Andreotti,* the court held that the rights and powers of the debtor, as hypothetical lien creditor, attached on the date the order for chapter 11 relief was entered. *Id.* The *York* court never explained why it ignored § 348(a), which suggests that the date for determining hypothetical lien creditor status is the date on which the initial involuntary was filed. Indeed, they completely fail to mention § 348.

Both parties rely on one other decision which clearly supports only debtors' position. *Commercial Credit Corp. v. Skutt,* 341 F.2d 177 (8th Cir.1965). We will note simply that defendants' committed what we hope was a simple error when they cited as precedental the Eighth Circuit's description of the lower court decision, rather than the actual holding of the case. The Eighth Circuit held that jurisdiction vested as of the date of the filing of the original creditors' involuntary petition. *See* Debtors' Brief at 9–10, *citing Commercial Credit Corporation v. Skutt,* 341 F.2d 177, 179, 181. Defendants also failed to note the Eighth Circuit's lengthy discussion of the policies supporting its conclusion, including the argument that a creditor should not be allowed to oppose an involuntary; inevitably the creditor's only motive is the protection of its preferential transfer. *Id.* at 180. Although this is an Act case, we find the policy arguments highly analogous and persuasive.

12. Of course, our analysis of § 348 and the case law suggests that the petition was filed (for § 547 purposes) on the date of the involuntary.

In reviewing this case, we note that debtors' position is consistent with the plain wording of the Code and the significant case law in this area. Defendant cites two cases, one of which reaches its conclusion based on policy considerations not present in the instant case. The second case relies on the first as authority, but fails to give any mention to the clear directives of § 348. Debtors have clearly stated a claim with regard to § 547, since the existence of the gap period validates debtors' pleading irregardless of which date is chosen to calculate the preference period. As far as the post-petition transfer is concerned, we find that § 348 [12] controls, and determine that the actual filing date is the date of the involuntary petition. Thus, debtors have sufficiently stated the claims for post-petition transfers.

Thus, independently of the overlap period, debtors have clearly stated their § 547 claims.