**In re James Kevin MURRAY d/b/a Murray Construction and Lori Jean Murray, Debtors.**

**James Kevin MURRAY and Lori Jean Murray, Plaintiffs,**

v.

**GREAT VALLEY SAVINGS ASSOCIATION, Defendant.**

**Bankruptcy No. 87–00924T.**

**Adv. No. 87–0718.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 26, 1988.

Karl E. Friend, Allentown, Pa., for debtors.

Charles J. Phillips, Mogel, Speidel, Bobb & Kershner, Reading, Pa., for Great Valley Sav. Ass'n.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Chapter 7 debtors James Kevin Murray, d/b/a Murray Construction and Lori Jean Murray ("debtors") filed a complaint against creditor Great Valley Savings Association ("Great Valley") in an effort to restrain Great Valley from continuing foreclosure proceedings on debtors' residence. On Great Valley's motion to dismiss, we find that debtors have failed to state a claim upon which relief could be granted and that we lack subject matter jurisdiction. Although formal findings of fact and conclusions of law are not necessary in this matter,[1] we present this brief memoranda because the Third Circuit has recently is-

---

1. *See* Rule 52 on the Federal Rules of Civil Procedure, incorporated into the Bankruptcy Rules at N.B.R. 7052.

sued an opinion in which many of the facts are similar to those found in the instant case.

Great Valley is listed in debtors' chapter 7 schedules as a result of a note and a residential mortgage executed by debtors in favor of Great Valley. There is no dispute that debtors have remained current on this obligation.

During the course of this case, counsel for debtors communicated in writing with counsel for Great Valley on several occasions. One thorny issue dividing the parties was debtors' unwillingness to execute a reaffirmation agreement. On June 19, 1987, counsel for Great Valley wrote a fateful letter to debtors' counsel; it is this letter that forms the basis for debtors' argument that Great Valley was "proceeding" with a foreclosure action in violation of the automatic stay. In relevant part, this letter read:

> In a prior letter to me you queried whether Act 6 would permit a foreclosure action for a nonpayment default. Act 6 makes no distinction between payment and performance defaults. The violation of any covenant of a mortgage can be raised as grounds for foreclosure and Act 6 does not prevent raising a non-payment default by notice of intention to (sic) foreclosure under Section 403.
>
> As I mentioned to you before, it is our position that if the Murrays receive a discharge, Great Valley will lose its ability to hold the Murrays responsible for any deficiency in the event that the value of the collateral is insufficient to cover the outstanding loan balance. This result would certainly constitute a default under both the note and mortgage executed by the Murrays. Accordingly it is Great Valley's intent to commence foreclosure proceedings if the personal liability of the Murrays to Great Valley is discharged in this Chapter 7 proceeding.
>
> I am enclosing a Reaffirmation Agreement for your review and for your clients signature. I urge your clients to execute the Reaffirmation Agreement

> and return it to me so that we can resolve this matter amicably.

Ex. "A," Stipulation of Facts.

Well established standards exist for review as of Rule 12(b)(6) motions requesting dismissal for failure to state a claim. Such a motion may not be granted:

> ... unless it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief, taking the allegations of the complaint as true, viewing them liberally, and giving the plaintiff the benefit of all inferences which fairly may be drawn therefrom.

*Fidelity Elec. Co., Inc. v. Wemmco (In re Fidelity Elec. Co., Inc.)*, 43 B.R. 385, 387 (Bankr.E.D.Pa.1984). Indeed, these motions are viewed with disfavor and granted only when the court can find some "insuperable" bar to relief. *Littles v. Lieberman (In re Littles)*, 75 B.R. 240, 241 (Bankr.E.D.Pa.1987), *citing* 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, p. 598, 694 (1969). In the traditional scenario, a defendant argues that the plaintiff has failed to plead the grounds of its case with sufficient specificity. *See e.g., Manson Billard, Inc. v. Hoffman Industries, Inc. (In re Manson Billard, Inc.)*, 82 B.R. 769, 771 (Bankr.E.D.Pa.1988). Great Valley's attack, however, goes beyond the sufficiency of the pleading, joining Rules 12(b)(6) and 12(b)(1) to suggest that the cause of action posited by plaintiff cannot exist.

We must first determine whether debtors have stated a claim for injunctive relief. The June 19th letter provided debtors' counsel with Great Valley's view of the relevant legal issues and informed debtors' counsel of potential post-discharge remedies available to Great Valley. Debtors suggest that the issuance of this letter and the information contained therein created a violation of the automatic stay of a magnitude requiring that we find Great Valley in contempt, award counsel fees and costs, and enter an order "restraining Defendant from ever proceeding with a foreclosure action based on bankruptcy."

Because the outcome of automatic stay litigation turns on innumerable factual details, comparing these cases is often an exercise in futility. Fortunately, a recent Third Circuit opinion provides a generic, two-step analysis useful for analyzing whether written communication constitutes a violation of the automatic stay. *Brown v. Pennsylvania State Employees Credit Union (In re Brown)*, 851 F.2d 81 (3d Cir.1988). Brown had received a letter from her employee credit union stating that it would bar her from future membership unless she reaffirmed her outstanding debt. Her attorney was not copied with the letter. She filed a complaint,[2] alleging that the letter violated her rights as established in § 362(a)(6), § 524(a)(2) and § 525. Examining the anti-discrimination provisions of § 525, the court explained that nothing in the bankruptcy code required that the credit union do business in the future with the debtor. At 84. Thus, the court took no issue with the policy that had been communicated to debtor. The court also looked at the "mildly worded" letter itself:

> The communication at issue works no unfairness on the debtor. On the contrary, it allows Brown to choose between discharging the debt and retaining the creditor's services. (As the bankruptcy court noted, one purpose of allowing reaffirmation is to preserve credit ratings).

At 86. *Brown* suggests that we must look at both the information being communicated and the form of the communication.

 We must decide whether the information communicated in Great Valley's June 19th letter was, like the underlying policy espoused in the *Brown* letter, facially legitimate. If redemption and reaffirmation constitute the exclusive methods for retention of possession of secured collateral, Great Valley is correct, and the assertions in the June 19th letter could not give rise to injunctive relief. If not, we must determine whether the bankruptcy default

clause in the mortgage would be enforced to allow Great Valley to proceed to a post-discharge foreclosure.

We agree with Great Valley that on these questions there is a legitimate difference of opinion as to whether the Third Circuit will follow *Riggs Nat'l Bank v. Perry*, 729 F.2d 982 (4th Cir.1984) or *GMAC v. Bell*, 700 F.2d 1053 (6th Cir.1983). In *Riggs*, the court held that enforcement of bankruptcy default clauses would impair a debtor's fresh start, and found them unenforceable as a matter of law. 729 F.2d 982, 985. The court stated specifically that it did not reach the issue earlier decided in *Bell*: whether a debtor may retain possession of collateral after a chapter 7 in the absence of redemption or reaffirmation. *Id.* at 986.

In *Bell*, the Sixth Circuit refused to allow the chapter 7 debtors to make installment redemption payments. 700 F.2d 1053, 1056. It held that chapter 7 debtors desiring to retain possession of secured collateral could only do so through redemption or reaffirmation. Only chapter 13 debtors could utilize installment redemption in accordance with the § 1325(a)(5) cram down. *Id.* at 1057. The court further held that although the bankruptcy default clause was initially ineffective during the course of the bankruptcy because of 11 U.S.C. § 541(c)(1), the clause became operable once the property was abandoned. *Id.*

Although courts within the Third Circuit have reviewed these issues, the Third Circuit Court of Appeals has not yet spoken definitely. In an Act case not cited by the parties, *Kopelman v. Halvajian (In re Triangle Laboratories, Inc.)*, 663 F.2d 463 (3d Cir.1981), in dicta, the Third Circuit has commented that ipso facto clauses were rendered unenforceable with the enactment of § 365(e)(1). In another early case not cited by the parties, *GMAC v. Rose (In re Rose)*, 21 B.R. 272, 6 C.B.C.2d 1104 (Bankr. D.N.J.1982), a bankruptcy court within this circuit held that the bankruptcy default

---

**2.** The underlying bankruptcy decision is reported at 49 B.R. 558 (Bankr.M.D.Pa.1985). The unreported district court appeal was, in turn, appealed to the Third Circuit, which dismissed for lack of jurisdiction since damages had not yet been assessed. 803 F.2d 120 (3d Cir.1986). The bankruptcy court then assessed damages and the district court affirmed.

clause was invalid and unenforceable under both federal and state law.[3] *Id.* at 279–80.

In dicta, our former Chief Judge Goldhaber posited the following scenario in support of his conclusion that redemption and reaffirmation are *not* the exclusive methods for retaining possession of secured collateral:

> If the debtor is not in default under a mortgage or security agreement, neither redemption nor reaffirmation is necessary for retention of a property. So long as the debtor's exemption covers any equity in the property, the maintenance of payment and the absence of other defaults are generally sufficient.

*In re Lewis,* 63 B.R. 90, 93 n. 2, 14 B.C.D. 882, Bankr.L.Dec. ¶ 71,270 (Bankr.E.D.Pa. 1986). This holding is contrary to that portion of *In re Bell* which held that redemption and reaffirmation were exclusive remedies. *Lewis* does not, however, discuss the validity of ipso facto clauses.

All of this dicta makes it impossible to determine whether a court within the Third Circuit would find this type of ipso facto clause enforceable. On the other question, we would probably follow the suggestion in *Lewis* that redemption and reaffirmation are not necessarily the only methods of retaining post-discharge possession of collateral, at least under the scenario outlined by Judge Goldhaber. This legitimate confusion as to the position that would ultimately be taken by our courts renders Great Valley's statement a statement of opinion, not actionable under § 362(b).

The Third Circuit decision in *Brown* suggests that the next step in our analysis is a review of the manner in which this message was communicated. We are convinced that no violation of the automatic stay occurred. The cases cited by the parties differ from the instant case in one outstanding and crucial aspect: they involve communications between the *creditor* and the *debtor*. Great Valley sent the June 19th letter to *debtors' counsel.* Innumerable cases proclaim the virtues of the automatic stay: the fresh start, the breathing spell, the cessation of harassment. None of these safeguards are breached when counsel exchange legal theories.

Additionally, debtors' counsel is estopped from attacking the June 19th letter by virtue of his own prior conduct. He acquiesced in an exchange of ideas and information extending over a two month period. *See* Stipulation, Exh. "A." Indeed, on May 11th, he wrote to Great Valley's counsel requesting: "Please provide me with your interpretation of how you would overcome the protection afforded the mortgagor in Act 6." The June 19th letter is merely Great Valley's response. All of this underscores the significant role that this type of intra office communication plays. In an area of practice as specialized as bankruptcy, these exchanges often highlight (for even experienced counsel) hitherto unconsidered provisions, cases, procedures and policies. The automatic stay does not protect an attorney from his opponent's legal theories.

Beyond noting that debtors received no direct communication, comparing cases in this area is like comparing apples and oranges.[4] We note simply that this letter was "mildly" worded, *In re Brown,* at 84, which is consistent with those cases which

---

**3.** The court also offered an alternative holding that plaintiff had waived its right to enforce the clause.

**4.** This is an area of the law which truly offers something for everybody. For example, a written communication containing a threat of future action may constitute a violation of the automatic stay. *See e.g., Olson v. McFarland Clinic, P.C. (In re Olson),* 38 B.R. 515, 10 C.B. C.2d 864, 11 B.C.D. 842, Bankr.L.Rep. ¶ 69,781 (Bankr.N.D.Iowa 1984). But when the creditor does not act with a coercive purpose, the communication is not necessarily a violation of the Code. *In re Brown,* at 84 n. 5. To this extent, the focus that these parties have placed on cases that are factually similar because they involve reaffirmation agreements, *see e.g., Green v. Nat'l Cash Register Co. (In re Green),* 15 B.R. 75, 5 C.B.C.2d 733, 8 B.C.D. 770, Bankr.L.Rep. ¶ 68,615 (Bankr.S.D.Oh.1981); *Schmidt v. American Fletcher Nat'l Bank & Trust Co. (In re Schmidt),* 64 B.R. 226 (Bankr.S.D.Ind.1986), is wrong. The key is the content and nature of the communication.

have held that passive attempts to collect are not actionable. *Schmidt v. American Fletcher Nat'l Bank & Trust Co.*, 64 B.R. 226, 228 (Bankr.S.D.Ind.1986). The automatic stay is not violated by the mere communication of policy. *Id.* at 229.

We can conceive of no set of facts on which debtors could prevail at the present time. The only current action of which debtor complains is the issuance of the letter. If debtor is discharged and Great Valley attempts to foreclose, debtors are free to file the appropriate papers if they find that § 524(a)(2)[5] has been violated.

■ We also agree with Great Valley's conclusion that a complaint can be dismissed under F.R.Civ.P. 12(b)(1) when it requests a bankruptcy court to restrain a party from proceeding with a future, post-discharge foreclosure action. The original but nonexclusive jurisdiction conferred upon the district court is outlined at 28 U.S.C. § 1334(b), and covers "... all civil proceedings arising under title 11, or arising in or related to cases under title 11." At least one court has held that the legislative history indicates that these clauses "operate conjunctively to define the scope of jurisdiction." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987). Thus, at the very least, the matter in question must be "related to" the main bankruptcy case. *Id.* Our own Third Circuit Court of Appeals has defined "related to"[6] as an inquiry: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). The *Pacor* court elaborated, "(a)n action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of

action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* at 994.

The instant case does not involve actions that will have any effect on this estate. The automatic stay continues until the earliest of (1) case closing; (2) case dismissal or (3) discharge. 11 U.S.C. § 362(c)(2). A post-discharge foreclosure action will effect the *former estate* property of the *former* debtor, and thus the threat of such future action is outside of our subject matter jurisdiction.[7] We lack jurisdiction to continue the automatic stay and its attendant protections beyond the discharge, dismissal or closing of a case. *Accord, In re Solar Equipment Corp.*, 19 B.R. 1010, 1011, 6 C.B.C.2d 1219 (W.D.La.1982).

An appropriate order follows.

### ORDER

AND NOW, this 26th day of August, 1988, the motion of Great Valley Savings Association requesting dismissal pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure is hereby GRANTED and this adversary is hereby DISMISSED.

---

**5.** Section 524(a)(2) indicates that a discharge serves as an injunction against the commencement or continuation of certain collection efforts. The debtors in this case have not yet been discharged. There is no set of facts upon which debtors could prevail on their § 524(a)(2) claim because the allegedly illegal action has not yet occurred.

**6.** Noting that there are many definitions of the term 'related to' the Fifth Circuit in *Wood* suggested that the Third Circuit *Pacor* definition had the "most support." 825 F.2d 90, 93.

**7.** Our conclusion might have been different had we found that the manner in which Great Valley communicated was so offensive and threatening as to constitute an independent violation of the Code.