### In re TAYLOR & ASSOCIATES, L.P., Debtor.

### Bankruptcy No. 95–33024.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 26, 1996.

The Taylor Law Firm, David H. Jones, Knoxville, Tennessee, Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tennessee, for Movant Dudley W. Taylor.

Hunter, Smith & Davis, Mark S. Dessauer, Kingsport, Tennessee, for Movant John F. Miller.

Egerton, McAfee, Armistead & Davis, P.C., Stephen A. McSween, Herbert H. Slatery, III, Knoxville, Tennessee, for James S. Bush, Petitioning Creditor.

Bailey, Roberts & Bailey, P.L.L.C., Robert M. Bailey, N. David Roberts, Jr., Knoxville, Tennessee, for William T. Hendon, Interim Trustee.

### MEMORANDUM ON DUDLEY W. TAYLOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND JOHN F. MILLER'S MOTION FOR LEAVE TO INTERVENE IN MOTION TO DISMISS INVOLUNTARY PETITION

RICHARD S. STAIR, Jr., Chief Judge.

This involuntary case was initiated under Chapter 7 with the filing of an Involuntary Petition against Taylor & Associates, L.P. on November 13, 1995, by James S. Bush, a creditor asserting a $300,000 claim grounded on "[i]nvestment fraud." An order for relief

pursuant to 11 U.S.C.A. § 303(h) (West 1993) has not been entered.

The court has before it two motions: a Motion to Dismiss Involuntary Petition filed by Dudley W. Taylor on December 1, 1995; and a Motion for Leave to Intervene in Motion to Dismiss Involuntary Petition filed by John F. Miller on December 11, 1995. Dudley Taylor alleges in his motion that the Involuntary Petition should be dismissed because (1) Taylor & Associates, L.P. is not an entity that qualifies as a debtor under 11 U.S.C.A. § 109(b) (West 1993 & Supp.1995); (2) the petitioning creditor, James Bush, was not eligible under 11 U.S.C.A. § 303(b) (West 1993 & Supp.1995) to file the Involuntary Petition; (3) this court is an inappropriate forum in which to settle disputes between a debtor and its sole creditor; (4) the Involuntary Petition was filed in bad faith; and (5) pursuant to 11 U.S.C.A. § 305 (West 1993), dismissal is in the best interest of all parties. The motion to dismiss is supported with a brief and an Affidavit of Dudley W. Taylor, accompanied by exhibits, filed December 1, 1995, as well as additional briefs and numerous affidavits, among other things, filed thereafter.

John F. Miller, identifying himself as "an interested person," filed his motion to intervene and a supporting brief, accompanied by an exhibit, on December 11, 1995, asserting in his brief that he is "the plaintiff, an intervenor or a party requesting to intervene in" eight state court proceedings in which he "is attempting to recover the proceeds of cashier's checks issued by the respective defendant financial institutions which were endorsed to his order by Joseph Taylor and delivered to Mr. Miller in consideration of the return of investments and other monies owing Mr. Miller by Mr. [Joseph] Taylor." In addition to adopting the arguments posited in Dudley Taylor's motion, Mr. Miller argues in his motion that the court "is without jurisdiction to entertain this proceeding" because the Involuntary Petition was not filed by at least three creditors as required by Bankruptcy Code § 303(b). Alternatively, Mr. Miller argues that the court should dismiss the Involuntary Petition pursuant to Code § 305(a)(1) because "the interests of

creditors and the debtor[ ] would be best served by the parties resolving their respective disputes pursuant to state law."

The petitioning creditor, James Bush, filed a response to Dudley Taylor's motion to dismiss on December 15, 1995. In support of his response, Mr. Bush relies on various affidavits, among other things. The affidavits, also filed December 15, 1995, include those of James Bush; William T. Hendon, the Interim Trustee; David C. Andrew, an attorney that previously represented Joseph Taylor, the reputed general partner of the debtor, with respect to a securities matter; William W. Gilley, an alleged creditor of Taylor & Associates, L.P.; Stephen A. McSween and Herbert H. Slatery III, the attorneys representing James Bush; and Sherry M. Seay, the corporate secretary of "Joseph C. Taylor & Associates, Inc."

Oral argument on all issues raised in Dudley Taylor's motion to dismiss and Mr. Miller's motion to intervene was originally scheduled to be heard on December 22, 1995. However, on December 19, 1995, Dudley Taylor filed a Motion to Continue Oral Argument on Motion to Dismiss Involuntary Petition. Pursuant to an Order entered December 19, 1995, oral argument on all issues except the standing of Dudley Taylor and Mr. Miller to contest the Involuntary Petition filed against Taylor & Associates, L.P. was continued pending further order of the court. On December 20, 1995, Mr. Bush filed a Response to Motion for Leave to Intervene in Motion to Dismiss Involuntary Petition, accompanied by an Affidavit of William T. Hendon, Interim Trustee. Also on December 20, 1995, Dudley Taylor filed a reply to Mr. Bush's standing allegations, accompanied by a Supplemental Affidavit of Dudley W. Taylor.

Thereafter, as set forth in an Order entered December 22, 1995, the court determined that it would not hear oral argument solely on the standing issue and directed the filing of rebuttal briefs by Dudley Taylor and Mr. Miller. Following a number of discovery disputes, the parties filed rebuttal briefs, supplemental affidavits, and deposition excerpts. Dudley Taylor filed a Motion to Strike and supporting brief on January 16,

1996, seeking to strike the Affidavit of William T. Hendon, Interim Trustee, filed December 15, 1995. The court will address the Motion to Strike in this Memorandum along with the motion to dismiss and motion to intervene. Oral argument on Dudley Taylor's Motion to Dismiss Involuntary Petition and Mr. Miller's Motion for Leave to Intervene in Motion to Dismiss Involuntary Petition was heard January 23, 1996.

## I

█ Mr. Miller, while recognizing in his December 11, 1995 brief that the elements of 11 U.S.C.A. § 303(b) (West 1993 & Supp. 1995) "are not jurisdictional in the technical sense of subject matter jurisdiction," included in his motion to intervene that the court lacks "jurisdiction" over this involuntary case because the requirements of § 303(b) have not been satisfied. Courts have long recognized that the elements of Bankruptcy Code § 303(b) are not prerequisites to establishing a bankruptcy court's subject matter jurisdiction over proceedings arising from an involuntary petition. *See In re Everett,* 178 B.R. 132, 144 (Bankr.N.D.Ohio 1994), and cases cited therein; *Dunlop Tire & Rubber Corp. v. Earl's Tire Serv., Inc. (In re Earl's Tire Serv., Inc.),* 6 B.R. 1019, 1022–23 (D.Del. 1980); 2 *Collier on Bankruptcy* ¶ 303.15[6] (15th ed. 1995). Rather, "the filing of a petition, sufficient upon its face, ... clearly gives the bankruptcy court jurisdiction of the proceeding." *Canute S.S. Co. v. Pittsburgh & W. Va. Coal Co.,* 263 U.S. 244, 248, 44 S.Ct. 67, 68, 68 L.Ed. 287 (1923).

Mr. Miller has failed to cite any case in his brief that supports his allegation that the court lacks jurisdiction over this involuntary case because Mr. Bush, a single creditor, filed the Involuntary Petition against Taylor & Associates, L.P. who, according to Mr. Miller, has twelve or more creditors. The court's own research supports a finding that any alleged failure by Mr. Bush to file the Involuntary Petition in compliance with § 303(b) has no effect on the court's jurisdic-

tion. *See Canute S.S. Co.,* 263 U.S. at 246–49, 44 S.Ct. at 68; 2 *Collier on Bankruptcy* ¶ 303.15[6]. Moreover, as permitted by the Bankruptcy Code, six additional creditors asserting claims against Taylor & Associates, L.P. totaling $1,144,548 joined the Involuntary Petition on December 15, 1995, and a seventh creditor with four separate claims each totaling in excess of $10,000 and an eighth creditor with a claim in excess of $70,000 joined the petition on December 20, 1995.[1]

The original petitioning creditor, Mr. Bush, in his December 15, 1995 response to the dismissal motion describes Dudley Taylor's argument that Taylor & Associates, L.P. cannot be considered a debtor under Title 11 of the Bankruptcy Code as involving subject matter jurisdiction. *See* 8 *Collier on Bankruptcy* ¶ 1011.05 (15th ed. 1995). Dudley Taylor argues in his December 1, 1995 brief that no evidence exists to support the conclusion in the Involuntary Petition that the debtor is a partnership; and therefore, under 11 U.S.C.A. §§ 101(13), 101(41), and 109(b) (West 1993 & Supp.1995), which in material part only permit individuals, partnerships, and corporations to be debtors under Chapter 7, the Involuntary Petition must be dismissed because it has been filed against an entity that cannot be a debtor.

Mr. Bush filed numerous affidavits in support of his December 15, 1995 response to Dudley Taylor's motion to dismiss and his December 20, 1995 response to Mr. Miller's motion to intervene. As previously mentioned, the affidavits include those of James Bush; William T. Hendon, the Interim Trustee; David C. Andrew, an attorney that previously represented Joseph Taylor, the reputed general partner of the debtor, with respect to a securities matter; William W. Gilley, an alleged creditor of Taylor & Associates, L.P.; Stephen A. McSween and Herbert H. Slatery III, the attorneys representing James Bush; and Sherry M. Seay, the corporate secretary of "Joseph C. Taylor &

---

1. Bankruptcy Code § 303(c) provides:
   After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, other than a creditor

filing under subsection (b) of this section, may join in the petition with the same effect as if such joining creditor were a petitioning creditor under subsection (b) of this section.
11 U.S.C.A. § 303(c) (West 1993).

Associates, Inc." These affidavits and the affixed exhibits support the alleged existence of a limited or general partnership known as Taylor & Associates, L.P. For jurisdictional purposes, the court finds that the Involuntary Petition is sufficient on its face; and, therefore, the court has jurisdiction over the Involuntary Petition for purposes of resolving the issues raised in Dudley Taylor's motion to dismiss and Mr. Miller's motion to intervene.

Furthermore, regardless of whether the elements of 11 U.S.C.A. § 303 (West 1993 & Supp.1995) have in fact been satisfied, the issues presented by Dudley Taylor and Mr. Miller involve matters both "arising under title 11" and "arising in ... title 11," and a determination of whether this involuntary case may proceed under Title 11 is core. 28 U.S.C.A. §§ 157(b), 1334(b) (West 1993). The court has jurisdiction over this involuntary case and the issues raised in the motions filed by Dudley Taylor and Mr. Miller.

## II

■ Mr. Bush argues in his responses that Dudley Taylor and Mr. Miller lack standing under the Bankruptcy Code and Rules to contest the Involuntary Petition. A historical review of the Bankruptcy Code supports Mr. Bush's argument with respect to Mr. Miller. The Bankruptcy Act of 1898 provided at section 18(b) that "[t]he bankrupt, or any creditor, may appear and plead to the petition," and section 59(f) of the Act permitted "[c]reditors other than original petitioners ... [to] enter their appearance and join in the petition, or file an answer and be heard in opposition to the prayer of the petition." Nelson Act of July 1, 1898, ch. 541, §§ 18(b), 59(f), 30 Stat. 544, 551, 562 (amended 1938, repealed 1978). In 1938, both sections 18(b) and 59(f) were amended to prohibit creditors from opposing an involuntary petition. Chandler Act of June 22, 1938, ch. 575, §§ 18(b), 59(f), 52 Stat. 840, 852, 869 (codified at 11 U.S.C. §§ 41(b), 95(f)), *repealed by* Act of Nov. 6, 1978, Pub.L. No. 95–598, tit. IV, § 401, 92 Stat. 2549, 2682; 3 *Collier on Bankruptcy* ¶ 59.01[6] (14th ed. 1977). The purpose of this restriction was clearly explained by Congress as follows:

A creditor should not be permitted to oppose an adjudication [of the involuntary petition]; invariably, the motive of such a creditor is to protect a preference or to retain some other undue advantage at the expense of the other creditors, contrary to the fundamental purpose of the act—an equitable distribution among all creditors.

H.R.Rep. No. 1409, 75th Cong., 1st Sess. 17 (1937); *see Carlson Plywood Co. v. Vytex Plastics Corp.,* 519 F.2d 556, 557–58 (7th Cir.1975).

The present-day Bankruptcy Code and Rules contain similar provisions that function to prevent creditors from seeking dismissal of an involuntary petition in order to protect a preference or retain some other unfair advantage. *See Manson Billard, Inc. v. Hoffman Indus. Inc. (In re Manson Billard, Inc.),* 82 B.R. 769, 771–72 (Bankr.E.D.Pa. 1988). Bankruptcy Code § 303(j), which limits a voluntary dismissal of an involuntary petition, provides: "Only after notice to all creditors and a hearing may the court dismiss a petition filed under this section—(1) on the motion of a petitioner; (2) on consent of all petitioners and the debtor; or (3) for want of prosecution." 11 U.S.C.A. § 303(j) (West 1993). The purpose of § 303(j), as set forth in the legislative history, "is to prevent collusive settlements among the debtor and the petitioning creditors while other creditors, that wish to see relief ordered with respect to the debtor but that did not participate in the case, are left without sufficient protection." H.R.Rep. No. 595, 95th Cong., 1st Sess. 324 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6280.

With regard to answering and contesting an involuntary petition, 11 U.S.C.A. § 303(d) (West 1993) allows only "[t]he debtor, or a general partner in a partnership debtor that did not join in the petition, ... [to] file an answer." Similarly, Fed.R.Bankr.P. 1011 provides in material part:

(a) **Who may contest petition**

The debtor named in an involuntary petition or a party in interest to a petition commencing a case ancillary to a foreign proceeding may contest the petition. In the case of a petition against a partnership under Rule 1004(b), a nonpetitioning gen-

eral partner, or a person who is alleged to be a general partner but denies the allegation, may contest the petition.

The advisory committee notes to Rule 1011 make clear that "[t]he rule preserves the features of the former Act and Rule 112 and the Code permitting no response by creditors to an involuntary petition or petition against a partnership under rule 1004(b)." Fed. R.Bankr.P. 1011 advisory committee notes. As previously mentioned, the Bankruptcy Act of 1898, as amended in 1938, prohibited creditors from contesting an involuntary petition in order to prevent creditors from protecting a preference or retaining some other unfair advantage. Rule 112 of the former Federal Rules of Bankruptcy Procedure, which derived from section 18(b) of the Bankruptcy Act of 1898, as amended in 1938, also prohibited creditors from opposing an involuntary petition.[2] 12 *Collier on Bankruptcy* ¶¶ 112.01 to 112.02 (14th ed. 1978).

The current edition of *Collier on Bankruptcy* also recognizes that creditors are prohibited from opposing an involuntary petition. With regard to Bankruptcy Code § 303(d), *Collier* provides:

> Non-petitioning creditors are not given the right to answer a petition....

> A creditor should not be permitted to oppose the entry of an order for relief; invariably, the motive of such a creditor is to protect a preference or to retain some other undue advantage at the expense of the other creditors, contrary to a fundamental purpose of the bankruptcy laws: an equitable distribution among creditors.

2 *Collier on Bankruptcy* ¶ 303.20[5] (15th ed. 1995) (footnote omitted) (unattributed quotation of H.R.Rep. No. 1409, 75th Cong., 1st Sess. 17 (1937)). With respect to Rule 1011, *Collier* provides:

**2.** Rule 112 provided in material part: "The alleged bankrupt in an involuntary petition, or, in the case of a petition against a partnership under subdivision (b) or (c) of Rule 105, any general partner (or alleged general partner) who is not a petitioner, may contest the petition."

**3.** At paragraph 2 of the Supplemental Affidavit of Dudley W. Taylor filed December 20, 1995, Dudley Taylor states:

Rule 1011 contains no provision authorizing creditors to contest an involuntary petition....

> This recognizes that bankruptcy is a collective proceeding intended to benefit creditors. As such, it would not be in the interest of creditors generally to permit objections by particular creditors who might stand to lose more in a collective proceeding.

8 *id.* ¶ 1011.04.

Only Dudley Taylor and John Miller have contested the Involuntary Petition filed against Taylor & Associates, L.P. Dudley Taylor does not assert that he is the debtor, a nonpetitioning general partner of Taylor & Associates, L.P., or a creditor. Instead, Dudley Taylor asserts that he is only the attorney that drafted the limited partnership documents for Taylor & Associates, L.P. However, Dudley Taylor argues that Mr. Bush, the original petitioning creditor, has alleged in his December 15, 1995 response to the motion to dismiss that he, Dudley Taylor, is a general partner. Therefore, notwithstanding that Dudley Taylor denies the existence of a partnership and denies that he is a partner,[3] Dudley Taylor argues that pursuant to Fed.R.Bankr.P. 1011 he has standing to oppose the Involuntary Petition. Dudley Taylor also asserts that he has standing to contest the Involuntary Petition based on *In re G–2 Realty Trust*, 6 B.R. 549 (Bankr. D.Mass.1980).

The court finds that Dudley Taylor's reliance on *G–2 Realty Trust* is misguided. In that case, the Massachusetts bankruptcy court was required to determine whether an involuntary petition filed under Chapter 11 should be dismissed upon motion by a secured creditor. The secured creditor alleged that the filing of the involuntary petition resulted from collusion between the debtor

I am not now, nor was I ever, a general partner in the purported partnership of Taylor & Associates, L.P. ("Taylor & Associates"). I never agreed to be a partner in Taylor & Associates, whether general or limited, nor have I ever acted in any capacity as a general or limited partner in Taylor & Associates.

and petitioning creditors; therefore, the involuntary petition was filed in bad faith and should be dismissed. In a footnote to the opinion, the court rejected the debtor's and petitioning creditors' argument that under § 303(j) the secured creditor lacked standing to file a motion to dismiss the involuntary petition based on the following analysis:

> Section 303(j) does not in any way attempt to limit which parties may properly bring a motion to dismiss an involuntary petition. Rather, that section simply provides that where an involuntary is sought to be dismissed by a petitioning creditor, by consent between the petitioning creditors and the debtor, or through a lack of prosecution by the petitioning creditors, dismissal may only take place after all creditors have received notice and an appropriate hearing has been held. The obvious import of this section, as reflected in the legislative history, is to prevent collusive settlements by the debtor and the petitioning creditors by insuring that all creditors are aware that the involuntary may be dismissed. Moreover, under § 1112(b) of the Code, the Bank "as a party in interest" is clearly granted the standing to seek a dismissal of any proceeding brought under Chapter 11.

*G–2 Realty Trust*, 6 B.R. at 551 n. 5 (citations omitted). The court's statement regarding § 303(j) is contrary to the general rule that a nonpetitioning creditor has no standing to oppose an involuntary petition. *See, e.g., Manson Billard, Inc.*, 82 B.R. at 771–72; 2 *Collier on Bankruptcy* ¶ 303.20[5] (15th ed. 1995); 8 *id.* ¶ 1011.04. Furthermore, this court's historical review of the Bankruptcy Code and Rules provides a more accurate analysis of the creditor standing issue in this Chapter 7 involuntary case.

As previously mentioned, Dudley Taylor asserts that he has standing to oppose the Involuntary Petition under Fed.R.Bankr.P. 1011 because Mr. Bush has alleged that he is a general partner of Taylor & Associates, L.P. Mr. Bush included the following statements in his response to the motion to dismiss:

> [T]wo possible exceptions to the general rule [that nonpetitioning creditors are not permitted to oppose an involuntary peti-

tion] may apply. First, unlike the Code, the Rules do permit a person alleged to be a general partner, but denying the allegation, to contest the petition. *See* Bankruptcy Rule 1011(a). Although the Petition does not allege that D. Taylor is a general partner, in response to D. Taylor's Motion, Bush has been forced to set forth facts indicating that D. Taylor is a general partner in Taylor & Associates, L.P. This may be sufficient under the Rules for D. Taylor to have standing to contest the Petition. *See* Bankruptcy Rule 1011(a).

. . . .

... [With regard to the issue of whether Taylor & Associates, L.P. is a partnership eligible for bankruptcy,] the profits and losses from Taylor & Associates, L.P. were being shared by the partners.... This evidence of the sharing of the profits of the business is "prima facie evidence" that a partnership exists.

The sharing of losses was also contemplated. In a letter dated October 31, 1995, to J. Taylor, D. Taylor offers to share, along with law partner Fleishman, J. Taylor's losses from a "bond deal." This is further evidence that a partnership existed.

Finally, the existence of a partnership is shown by individuals holding themselves out as partners. The intent to enter into a partnership can be shown by one's claim that he is a partner. J. Taylor held himself out as a partner with D. Taylor and Taylor & Associates to Bush, to Andrew, and in the Certificate of Limited Partnership. Additionally, Andrew was told by both D. Taylor and J. Taylor that Taylor & Associates, L.P. was a general partnership and that J. Taylor was one of several partners. Further, in the memorandum attached to Andrew's affidavit, D. Taylor asserts that he and Fleishman, if anyone, had control over Taylor & Associates, L.P., and, hence, D. Taylor held himself out as a partner.

J. Bush's Resp. to Mot. to Dismiss Involuntary Pet. at 9–10, 13–14 (citations omitted).

Dudley Taylor may arguably be a recipient of an alleged preferential transfer.[4] Based solely on the purpose of the Bankruptcy Code and Rules, that is to prohibit a creditor from protecting a preferential transfer by opposing an involuntary petition, Dudley Taylor should not be permitted to seek dismissal of the Involuntary Petition. However, Rule 1011 allows "a person who is alleged to be a general partner but denies the allegation ... [to] contest the petition." This provision was included because "of the possible consequences to [the alleged general partner] of an order for relief against the entity alleged to include him as a member." Fed. R.Bankr.P. 1011 advisory committee notes; *see* 8 *Collier on Bankruptcy* ¶ 1011.04 (15th ed. 1995).

James Bush did not include in the Involuntary Petition the names of any general or limited partners of Taylor & Associates, L.P. Pursuant to Fed.R.Bankr.P. 7004(b)(3), service on the debtor was accomplished by serving the Tennessee Secretary of State pursuant to Fed.R.Bankr.P. 1010 and Tenn. R.Civ.P. 4.04(12). Because Joseph Taylor, the one individual who could reveal the necessary facts regarding the debtor, died shortly before the filing of the Involuntary Petition, the process of identifying the legal nature of the debtor as a partnership and its partners began with the filing of the Involuntary Petition and the appointment of the Interim Trustee. Based on the foregoing facts, the court finds that Mr. Bush has alleged that Dudley Taylor is a general partner of the debtor. Therefore, under Rule 1011, Dudley Taylor has standing to contest the Involuntary Petition.

■ Mr. Miller seeks to intervene as a party to Dudley Taylor's motion to dismiss, asserting in his December 11, 1995 brief that he "is currently the plaintiff, an intervenor or a party requesting to intervene in" eight state court cases in which he "is attempting to recover the proceeds of cashier's checks ... which were endorsed to his order by Joseph Taylor and delivered to Mr. Miller in consideration of the return of investments and other monies owing Mr. Miller by Mr. [Joseph] Taylor." Mr. Miller seeks dismissal of the Involuntary Petition in an effort to protect his ability to proceed with the eight state court actions and collect funds that might be considered property of the estate of Taylor & Associates, L.P. Mr. Miller is not the debtor or an alleged nonpetitioning general partner of the debtor; therefore, the court finds that he has no standing under Bankruptcy Code § 303(d) or Rule 1011 to answer or contest the Involuntary Petition. Furthermore, because Mr. Miller is also not the debtor or a petitioning creditor, he has no standing to seek dismissal of the Involuntary Petition under Bankruptcy Code § 303(j). This finding effectuates the purpose of the Bankruptcy Code and Rules, that is to prevent a creditor from opposing an Involuntary Petition in order to retain some undue advantage. Mr. Miller will not be permitted to seek dismissal of the Involuntary Petition or to intervene in Dudley Taylor's motion to dismiss.

The court rejects Mr. Miller's argument, contained in his January 11, 1996 reply to Mr. Bush's response to his motion to intervene, that he "should be permitted to intervene in order to assist the Court in determining whether it has subject matter jurisdiction in this case." In support of this argument, Mr. Miller relies on Fed.R.Bankr.P. 2018(a), which provides: "In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." The court finds no reason to allow Mr. Bush to circumvent the restrictions of § 303 and Rule 1011 through the use of Rule 2018(a), which has questionable application to a Chapter 7 bankruptcy case.[5]

---

4. The Affidavit of William T. Hendon, Interim Trustee, filed December 15, 1995, states at paragraph 4 that Mr. Hendon has "reviewed checks of Taylor & Associates, L.P. made payable to Dudley W. Taylor and McDonnell, Dyer, & Taylor totaling $578,750.00 for the period August 15, 1995, until present." Dudley Taylor, at paragraph 18 of his supplemental affidavit filed January 16, 1996, alleges that this information is incorrect.

5. Rule 2018(a) implements §§ 1109 and 1164 of the Bankruptcy Code. *See* Fed.R.Bankr.P. 2018 advisory committee notes. Sections 1109 and

■ Mr. Miller also argues in his January 11, 1996 reply that he has standing as a "potential creditor" to challenge the court's subject matter jurisdiction, relying on *In re Verrazzano Towers, Inc.*, 10 B.R. 387, 391 (Bankr.E.D.N.Y.1981), to support his argument. The court in *Verrazzano Towers* addressed the issue of whether creditors could oppose a voluntary petition within the context of Chapter 11 based on allegations of lack of jurisdiction and fraud. No mention is made of potential creditors and involuntary petitions in the *Verrazzano Towers* case. Furthermore, Code § 1109(b) specifically provides that "[a] party in interest, including ... a creditor, ... may raise and may appear and be heard on any issue in a case under ... chapter [11]." 11 U.S.C.A. § 1109(b) (West 1993). *Verrazzano Towers* and § 1109(b) are inapplicable to the standing issue presently before the court. Accordingly, the court rejects Mr. Miller's argument that he has standing as a potential creditor to challenge the court's subject matter jurisdiction.

Mr. Miller's Motion for Leave to Intervene in Motion to Dismiss Involuntary Petition filed December 11, 1995, will be denied.

### III

■ The court, having found that Dudley Taylor has standing to contest the Involuntary Petition, must address the merits of his motion to dismiss. Pursuant to Fed.R.Civ.P. 12, incorporated into Fed.R.Bankr.P. 7012, a motion to dismiss based on Fed.R.Civ.P. 12(b)(6) is to be treated as one for summary judgment under Fed.R.Civ.P. 56 if the motion to dismiss is accompanied by matters outside the pleadings. The parties have specified that Dudley Taylor's motion to dismiss should be treated as a motion for summary judgment under Fed.R.Civ.P. 56, incorporated into Fed.R.Bankr.P. 7056.[6]

On January 16, 1996, Dudley Taylor filed a Motion to Strike Mr. Hendon's December 15, 1995 affidavit and the attached exhibits that were submitted in support of James Bush's response to the motion to dismiss. Dudley Taylor seeks to strike Mr. Hendon's affidavit and the attached exhibits based on the argument that the affidavit was not made on Mr. Hendon's personal knowledge and the facts included in the affidavit and the attached exhibits are inadmissible hearsay and have not been properly authenticated.

■ In making a determination under Rule 56, the court may consider an affidavit only if it was "made on personal knowledge" and if it "set[s] forth such facts as would be admissible in evidence." Upon a party's objection, documents filed in support of or in opposition to a motion may not be considered by the court unless they have entered "the record as attachments to an appropriate affidavit" and "would be admissible in evidence." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89 (6th Cir.1993); Fed.R.Civ.P. 56(e). While there is merit to Dudley Taylor's Motion to Strike with respect to certain statements contained in Mr. Hendon's affidavit and certain exhibits attached to it, the court finds that some of the exhibits are admissible evidence that can be considered in determining whether Taylor & Associates, L.P. qualifies as a debtor under the Bankruptcy Code. Furthermore, Dudley Taylor in his Supplemental Affidavit of Dudley W. Taylor filed January 16, 1996, has admitted the genuineness of numerous documents he seeks to have stricken by his Motion to Strike. His admissions serve to authenticate these documents.[7]

1164 are applicable exclusively to Chapter 11 cases and have no application to Chapter 7. *See* 11 U.S.C.A. § 103(f), (g) (West 1993).

6. In fact, Dudley Taylor's motion to dismiss is not expressly grounded on Rule 12(b)(6). However, as the parties have dealt with the motion as one for summary judgment and have filed documents outside the pleadings, the court will also treat the dismissal motion as a motion for summary judgment.

7. Federal R.Evid. 901, entitled "Requirement of Authentication or Identification," provides in material part:

(a) **General provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
(b) **Illustrations.** By way of illustration only, and not by way of limitation, the following are

First, Exhibit A to Mr. Hendon's affidavit is an Application for Employer Identification Number filed in the name of Taylor & Associates, L.P. as applicant, and signed by Dudley W. Taylor on March 9, 1994. Item 7 of the Application, entitled "Name of principal officer, general partner, grantor, owner, or trustor," lists Joseph C. Taylor as the "General Partner." Item 8a of the Application, entitled "Type of entity," designates that the applicant is a "Partnership." Dudley Taylor has denied that Taylor & Associates, L.P. was a partnership. Therefore, pursuant to Fed.R.Evid. 801(d)(2), the Application constitutes an admission by a party-opponent and is not hearsay. Dudley Taylor, at paragraph 35 in his supplemental affidavit filed January 16, 1996, admits that he prepared the Certificate of Limited Partnership and obtained a tax number for Taylor & Associates, L.P. on March 9, 1994, resulting in the issuance of the notice from the Internal Revenue Service attached to Mr. Hendon's affidavit as Exhibit B. The court, therefore, will consider the Application for Employer Identification Number as admissible evidence as well as the resulting notice from the Internal Revenue Service assigning Taylor & Associates, L.P. an employer identification number.

Exhibit C to Mr. Hendon's affidavit is a Memorandum dated March 9, 1994, from Dudley Taylor to Sandra Plummer and Joseph Taylor, which contains a reference to Joseph Taylor's "Limited Partnership" and a discussion of a security agreement that should be signed "on behalf of Taylor & Associates, L.P. and Joseph C. Taylor, individually." Exhibit D to Mr. Hendon's affidavit is a letter dated May 24, 1994, from Joanne M. Pierce, a paralegal employed by Dudley Taylor, to Sandra Plummer, regarding certain secured parties, including "Taylor and Associates, L.P." The letter makes reference to a UCC-1 that was enclosed in the correspondence. This enclosure, attached as Exhibit E to Mr. Hendon's affidavit, lists the secured parties as "Joseph C. Taylor and Taylor and Associates, L.P." and is signed by

Joseph C. Taylor as "General Partner and Secured Party." Another letter from Joanne M. Pierce to Sandra Plummer dated July 1, 1994, is attached to Mr. Hendon's affidavit as Exhibit G. This letter also references "Taylor and Associates, L.P." as a secured party with respect to UCC-1s filed with the Tennessee Secretary of State.

Exhibits C, D, E, and G to Mr. Hendon's affidavit, which reference the partnership, constitute admissions by a party-opponent or an agent or representative of a party-opponent under Fed.R.Evid. 801(d)(2) and are, therefore, not hearsay. Furthermore, Dudley Taylor, at paragraphs 40 and 42 in his supplemental affidavit filed January 16, 1996, states that these documents attached as Exhibits C, D, E, and G were prepared by him or others in his office. The court, therefore, will consider Exhibits C, D, E, and G as admissible evidence.

Exhibits J, K, and L to Mr. Hendon's affidavit are deeds of trust evidencing conveyances dated December 31, 1994, from Frances and Albert Ridley, Terry and Sandra Plummer, and Carl and Debra Sams, respectively, as grantors, to Dudley W. Taylor, Trustee, to secure payment of obligations owing the Beneficiary of each deed of trust, "Joseph C. Taylor and Taylor & Associates, L.P." Dudley Taylor, at paragraph 42 in his January 16, 1996 supplemental affidavit, states that he or someone in his office prepared these documents. The court, therefore, will consider Exhibits J, K, and L as admissible evidence.

Exhibit Q is a letter from Lori Farris Fleishman, an employee of Dudley Taylor's law firm,[8] to "Mr. Joe Taylor[,] Taylor & Associates, L.P." dated March 28, 1995. This letter constitutes an admission by an agent or representative of a party-opponent under Fed.R.Evid. 801(d)(2) and is, therefore, not hearsay. The court will consider Exhibit Q as admissible evidence.

examples of authentication or identification conforming with the requirements of this rule: (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

**8.** Dudley Taylor states at paragraph 15 in his supplemental affidavit filed January 16, 1996, that he and Ms. Fleishman were also partners in an entity known as Taylor & Fleishman.

Exhibits T and V are billing statements dated June 5, 1995, and October 6, 1995, from Dudley Taylor's firm to Joseph Taylor referencing "Taylor & Associates, L.P." for the periods of May 1, 1995, to May 31, 1995, and June 1, 1995, to September 27, 1995. Exhibit V, the October 6, 1995 billing statement, evidences that an employee having the initials ARL performed work on July 31, 1995, and August 15, 1995, concerning the Taylor & Associates, L.P.'s Certificate of Limited Partnership. Dudley Taylor admits at paragraphs 53 to 56 in his supplemental affidavit filed January 16, 1996, that these billing statements were from his firm and admits in his December 1, 1995 affidavit that he performed work concerning the Certificate of Limited Partnership for Taylor & Associates, L.P. The court will, therefore, consider these exhibits as evidence of billings from Dudley Taylor's firm to Joseph Taylor for work performed with regard to Taylor & Associates, L.P.

Dudley Taylor has not moved to strike the affidavits of Sherry M. Seay, William W. Gilley, David C. Andrew, Herbert H. Slatery III, James S. Bush, and Stephen A. McSween and the exhibits affixed to these affidavits. The court, therefore, will consider these affidavits and corresponding exhibits in determining the issues raised by Dudley Taylor's motion to dismiss. *See Batie*, 995 F.2d at 89.

**IV**

■ Dudley Taylor's first argument in support of his motion to dismiss is that the entity described as Taylor & Associates, L.P. does not qualify as a debtor under 11 U.S.C.A. § 109(b) (West 1993 & Supp.1995), which, with exceptions inapplicable in this case, provides that "[a] person may be a debtor under chapter 7 of this title." The term "person" is defined by 11 U.S.C.A. § 101(41) (West Supp.1995) to include an "individual, partnership, and corporation." The court must, therefore, determine whether Taylor & Associates, L.P. is a partnership.

Tennessee has adopted the Uniform Partnership Act (UPA) and the Revised Uniform Limited Partnership Act (RULPA). *See* Tenn.Code Ann. §§ 61–1–101 to 61–2–1208

(1989 & Supp.1995). A partnership is defined by the UPA as "an association of two (2) or more persons to carry on as coowners a business for profit." Tenn.Code Ann. § 61–1–105(a) (Supp.1995). The Tennessee Code also sets forth certain rules that must be applied in determining whether a general partnership exists. The rules applicable to this case include:

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived;

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(A) As a debt by installments or otherwise;

(B) As wages of an employee or rent to a landlord;

(C) As an annuity to a surviving spouse or representative of a deceased partner;

(D) As interest on a loan, though the amount of payment vary with the profits of the business; or

(E) As the consideration for the sale of the goodwill of a business or other property by installments or otherwise.

Tenn.Code Ann. § 61–1–106 (1989).

In Tennessee, a limited partnership is defined by the RULPA as "a partnership formed by two (2) or more persons under the laws of the state of Tennessee, and having one (1) or more general partners and one (1) or more limited partners." Tenn.Code.Ann. § 61–2–101(8) (1989). In order to form a limited partnership in Tennessee, a certificate of limited partnership must be properly executed and filed with the Tennessee Secretary of State. Tenn.Code Ann. § 61–2–201 (1989).

The Tennessee Supreme Court has provided the following summary of principles that should be considered in determining whether a partnership exists:

[N]o one fact or circumstance may be pointed to as a conclusive test, but each case must be decided upon consideration of all relevant facts, actions, and conduct of the parties. If the parties' business brings them within the scope of a joint business undertaking for mutual profit—that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them—the result is a partnership whether or not the parties understood that it would be so.

Moreover, the existence of a partnership depends upon the intention of the parties, and the controlling intention in this regard is that ascertainable from the acts of the parties. Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal effect of their acts. It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship. Stated another way, the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money.

*Bass v. Bass,* 814 S.W.2d 38, 41 (Tenn.1991) (citations omitted).

The court finds that the evidence presented establishes that Taylor & Associates, L.P. is a limited partnership under the laws of the State of Tennessee; therefore, Taylor & Associates, L.P. qualifies as a debtor under the Bankruptcy Code. As previously determined, numerous exhibits attached to Mr. Hendon's affidavit are admissible as evidence in support of the Involuntary Petition. Exhibit A is an Application for Employer Identification Number that was filed in the name of Taylor & Associates, L.P. as applicant, and signed by Dudley W. Taylor on March 9, 1994. Item 7 of the Application, entitled "Name of principal officer, general partner, grantor, owner, or trustor," lists Joseph C. Taylor as the "General Partner." Item 8a of the Application, entitled "Type of entity," designates that the applicant is a "Partnership." Upon submission of this application, the Internal Revenue Service issued an employer identification number and a notice of the issuance of the number. The notice, attached to Mr. Hendon's affidavit as Exhibit B, references "Taylor & Associates LP[,] Taylor Joseph C Gen Ptr." Exhibits A and B clearly evidence the existence of Taylor & Associates, L.P. as a partnership.

Exhibit C is a Memorandum dated March 9, 1994, from Dudley Taylor to Sandra Plummer and Joseph Taylor, which contains a reference to Joseph Taylor's "Limited Partnership" and a discussion of a security agreement that should be signed "on behalf of Taylor & Associates, L.P. and Joseph C. Taylor, individually." Exhibit D is a letter dated May 24, 1994, from Joanne M. Pierce, a paralegal employed by Dudley Taylor, to Sandra Plummer, regarding certain secured parties, including "Taylor and Associates, L.P." The letter makes reference to a UCC–1 that was enclosed in the correspondence. This enclosure, attached as Exhibit E to Mr. Hendon's affidavit, lists the secured parties as "Joseph C. Taylor and Taylor and Associates, L.P" and is signed by Joseph C. Taylor as "General Partner and Secured Party." Exhibit G, another letter from Joanne M. Pierce to Sandra Plummer dated July 1, 1994, also references "Taylor and Associates, L.P." as a secured party with respect to UCC–1s filed with the Tennessee Secretary of State. Finally, Exhibits J, K, and L to Mr. Hendon's affidavit are deeds of trust dated December 31, 1994, two of which were notarized May 5, 1995, evidencing conveyances to Dudley W. Taylor, Trustee, securing obligations of the grantors to "Joseph C. Taylor and Taylor & Associates, L.P." Clearly, Taylor & Associates, L.P. operated under a limited partnership designation, was commonly referred to as a partnership, and was represented to third parties to be a partnership.

Exhibit Q is a letter from Lori Farris Fleishman, an attorney in Dudley Taylor's law firm,[9] to "Mr. Joe Taylor[,] Taylor & Associates, L.P." dated March 28, 1995. Exhibits T and V are billing statements dated June 5, 1995, and October 6, 1995, from Dudley Taylor's firm to Joseph Taylor for work performed in whole or in part for "Taylor & Associates, L.P." for the periods of May 1, 1995, to May 31, 1995, and June 1, 1995, to September 27, 1995. Exhibit V, the October 6, 1995 billing statement, evidences that an employee having the initials ARL performed work on July 31, 1995, and August 15, 1995, concerning Taylor & Associates, L.P.'s Certificate of Limited Partnership. These exhibits evidence the existence of Taylor & Associates, L.P.

The Affidavit of William W. Gilley filed December 15, 1995, also supports a finding that Taylor & Associates, L.P. is a partnership. Mr. Gilley states in his affidavit that he believes he is a limited partner of Taylor & Associates, L.P. and that he

received a Schedule K–1, Partner's Share of Income, Credits, Deductions, etc. from Taylor & Associates, L.P. for the tax years 1993 and 1994.... Said Schedule K–1's listed me as a limited partner of Taylor & Associates, L.P., and I included the information in the Schedule K–1's in my federal income tax returns for the tax years 1993 and 1994.

Attached to Mr. Gilley's affidavit are copies of his 1993 Schedule K–1 and 1994 Schedule K–1, both entitled "Partner's Share of Income, Credits, Deductions, etc.," on which Mr. Gilley reported that he was a limited partner. For 1993, Mr. Gilley reported that his distributive share of ordinary losses was $5,044, his share of other income was $237,900, and his share of interest expenses was $1,352. For 1994, Mr. Gilley reported that his distributive share of ordinary losses was $970, his share of other income was $45,750, and his share of interest expenses was $260. The sharing of losses, income, and expenses with Mr. Gilley evidences the existence of a partnership.

The original petitioning creditor, James Bush, has also submitted an Affidavit of Sherry M. Seay filed December 15, 1995, in support of the Involuntary Petition. Ms. Seay's affidavit provides in material part:

In July, 1995, Joseph Taylor and David Andrew, attorney with Baker, Donelson, Bearman & Caldwell in Washington, D.C., met with Jack Herndon and Tom Parker of Advanced Financial Planning Securities Corporation in Nashville. Joseph Taylor related to me that the topic of this meeting was Joseph Taylor's outside business activities as they related to compliance with National Association of Securities Dealers rules and regulations.

... After the completion of said meeting and upon Joseph Taylor's return to Knoxville, Joseph Taylor informed me that the meeting had [gone] well and that the questions surrounding Taylor & Associates, L.P. had been answered by Joseph Taylor. Joseph Taylor informed me that he had told the people at the meeting in Nashville that Dudley Taylor had established Taylor & Associates, L.P. incorrectly and that it should have been established as a general partnership, rather than a limited partnership. Dudley Taylor, as described by Joseph Taylor, was to prepare any amendments or paperwork needed, along with an explanation to Advanced Financial Planning Securities Corporation, to establish that Taylor & Associates, L.P. was in actuality a general partnership.

... In August, 1995, Joseph Taylor gave me a Taylor & Associates, L.P. check re-order form from NationsBank with a note to remove the limited partner designation from the checks. Since I was told that Dudley Taylor was correcting the Taylor & Associates, L.P. paperwork to reflect that Taylor & Associates was a general partnership, I inquired of NationsBank as to what they needed to remove the L.P. designation from the printed checks. I was informed by NationsBank that they would need documentation from Dudley Taylor that the partnership was actually a general partnership.

... I called Dudley Taylor's office thereafter and spoke with JoAnne, Dudley Taylor's secretary, and requested that I be provided a copy of whatever documents

---

9.  *See supra* note 8.

Dudley Taylor had prepared as to the changes indicating that Taylor & Associates, L.P. was actually a general partnership. JoAnn[e] informed me that she did not know what had been done, but she would ask Dudley Taylor and let me know. I never received the information requested and I never received an explanation as to what had been done concerning the partnership documents. Checks were re-ordered from NationsBank during the last week of September, 1995 with the L.P. printed on the checks as before.

The excerpt of the January 9, 1996 deposition of Ms. Seay filed by Mr. Bush on January 22, 1996, contains similar statements regarding the existence of Taylor & Associates, L.P. as a partnership.

In further support of the existence of a partnership, Mr. Bush filed an Affidavit of David C. Andrew on December 15, 1995. Mr. Andrew states in his affidavit that he represented Joseph Taylor, individually, in July 1995. During this representation, Mr Andrew was advised by Dudley Taylor and Joseph Taylor that Taylor & Associates, L.P. was a general partnership, not a limited partnership, and that Joseph Taylor "was one of a number of general partners but was not the managing general partner." Thereafter, Mr. Andrew received a Memorandum dated July 24, 1995, addressed to "Joe Taylor, Dave Andrew and File" from Dudley Taylor regarding "Taylor & Associates." The July 24, 1995 Memorandum, attached to Mr. Andrew's affidavit, provides in material part:

In summary, TALP [Taylor & Associates, L.P.] was initially created for the purpose of making an investment by Joe Taylor, alone, with no other persons to have an ownership. It was subsequently used by other investors, all sophisticated at least in the sense of making their own

business and investment decisions and all having substantial business and investment experience, and was operated essentially as a[n] investment club. The effort to organize the entity as a limited partnership was unsuccessful, and accordingly, it can be viewed only as a general partnership, for investment purposes. I am not aware of Joe soliciting any investors for this partnership and he certainly had no control over it. If anyone had control over it as actually used, it was me or Lori Fleishman, or in particular, the two of us together.

James Bush, through his attorney, represented to the court in oral argument during the January 23, 1996 hearing that a Certificate of Limited Partnership was filed for Taylor & Associates, L.P. on May 6, 1994. Dudley Taylor admits in his brief filed January 16, 1996, that the Certificate of Limited Partnership was filed with the Secretary of State in May 1994. D. Taylor's Rebuttal Mem. of Law in Reply to Resp. to Mot. to Dismiss Involuntary Pet. at 3 & n. 5. Dudley Taylor also admits in his January 16, 1996 brief and at paragraph 21 of his affidavit filed December 1, 1995, that on November 7, 1995, he learned that a Certificate of Limited Partnership had been filed for Taylor & Associates, L.P. Moreover, a copy of the Certificate of Limited Partnership and a letter dated November 9, 1995, from the Tennessee Secretary of State certifying that it was filed on May 6, 1994,[10] was introduced and admitted into evidence as Exhibit 1 during a November 15, 1995 hearing on a Motion for Appointment of Interim Trustee filed November 14, 1995, by James Bush.[11] The court, therefore, finds that a Certificate of Limited Partnership for Taylor & Associates, L.P. was filed with the Tennessee Secretary of State on May 6, 1994, which evidences that Taylor & Associates, L.P. is a limited part-

---

10. The May 6, 1994 date coincides with a letter dated May 3, 1994, from Dudley W. Taylor appended to his December 1, 1995 affidavit as Exhibit C transmitting for a third time the Certificate of Limited Partnership to the Tennessee Secretary of State for filing. The court presumes but makes no finding that the filed Certificate of Limited Partnership was the one transmitted by Dudley Taylor to the Tennessee Secretary of State on May 3, 1994.

11. Dudley Taylor, acting pro se, entered an appearance at the November 15, 1995 hearing. The court, therefore, takes judicial notice pursuant to Fed.R.Evid. 201 of Exhibit 1 admitted into evidence without objection at the November 15, 1995 hearing. The Certificate of Limited Partnership is in "substantial compliance with the requirements of" Tenn.Code Ann. § 61–2–201 (1989).

nership. *See* Tenn.Code Ann. § 61–2–201 (1989).

Further support of the existence of a limited partnership is that Taylor & Associates, L.P. has held itself out as a limited partnership through the use of the L.P. designation in its name. Eight petitioners, in addition to Mr. Bush, have joined in the Involuntary Petition and represent in their joinder motions under penalty of perjury that they hold claims against Taylor & Associates, L.P. Dudley Taylor has not refuted that these additional petitioners are creditors of Taylor & Associates, L.P. Finally, a signatory card for a bank account established for Taylor & Associates, L.P. has been submitted to the court as Exhibit 5 to the Supplemental Affidavit of Dudley W. Taylor filed January 16, 1996. This signatory card,[12] signed by Joseph C. Taylor, establishes that an account was opened on January 24, 1995, under the following account title:

TYALOR [sic] & ASSOCIATES LP PARTNERSHIP

Dudley Taylor relies on numerous explanations to support his argument that a partnership does not exist. During the January 23, 1996 oral argument and in Dudley Taylor's brief and supplemental affidavit filed January 16, 1996, he explained that the designation of Taylor & Associates, L.P. appears on

many of the exhibits attached to Mr. Hendon's affidavit for the following reasons:

The documents attached as Exhibits C through F[13] ... were prepared after preparation of the Certificate [of Limited Partnership] and coincided with the time when it was rejected two times [by the Tennessee Secretary of State] and resubmitted a third time [in May 1994] with no apparent response. They were also prepared prior to the time that I was informed that Buchheit[14] refused to participate as a partner.

... Even after I became aware that Buchheit had declined to participate as a partner or otherwise, I did not feel comfortable in disregarding the name TALP[, Taylor & Associates, L.P.,] in the UCC filings and in the other paperwork related to the Valley investment. A Certificate had been tendered to the Secretary of State for filing, and an investment had been made. For these reasons, it appeared that the most cautious approach, particularly in connection with the UCC–1 filings, was to use the names of both Taylor as an individual and TALP as the investors and secured parties.

... The documents attached as Exhibits G through L[15] to Hendon's Affidavit are

---

**12.** The signatory card lists Taylor & Associates, L.P.'s taxpayer identification number as 621–52–5793. This is not the same number received from the Internal Revenue Service pursuant to the notice dated March 16, 1994, attached as Exhibit B to Mr. Hendon's affidavit filed December 15, 1995. Joseph Taylor was informed through the March 16, 1994 notice that the employer identification number for Taylor & Associates, L.P. was 62–1559388. This is the same partnership identification number used by Taylor & Associates, L.P. on William W. Gilley's Form K–1 for 1993 and 1994 to report Mr. Gilley's distributive share of losses, income, and interest expenses. *See* Attachments to Aff. of William W. Gilley (filed Dec. 15, 1995). The parties have not explained why the signatory card lists a different identification number for Taylor & Associates, L.P.; therefore, the court finds that the different number appearing on the card is irrelevant to the issues presently before the court.

**13.** Exhibit C is the Memorandum dated March 9, 1994, from Dudley Taylor to Sandra Plummer and Joseph Taylor discussing a security agreement and UCC–1 to be signed "on behalf of Taylor & Associates, L.P. and Joseph C. Taylor,

individually, as secured parties," and filed in connection with an "investment to be made by Joe, through his Limited Partnership." Exhibit D is a letter from Joanne M. Pierce to Sandra Plummer regarding, among other secured parties, "Taylor and Associates, L.P.," and the filing of UCC–1s. Exhibits E and F are UCC–1 statements that list "Joseph C. Taylor and Taylor and Associates, L.P." as secured parties and that are signed by Joseph C. Taylor as "General Partner and Secured Party."

**14.** Dudley Taylor also states in his January 16, 1996 supplemental affidavit and brief that Joseph Taylor and John Buchheit originally attempted to form an entity named "Taylor & Associates, L.P.," which Joseph Taylor and John Buchheit would use to make an investment in Valley Medical Systems, L.P.

**15.** Exhibit G is a letter from Joanne M. Pierce to Sandra Plummer dated July 1, 1994, which references "Taylor and Associates, L.P." as a secured party with respect to UCC–1s filed with the Tennessee Secretary of State. Exhibits J, K, and L are deeds of trust, two of which were notarized

also documents prepared by me or others in my office, with the exception of Exhibit H. These documents reflect the names of Taylor as an individual and TALP, since we had committed to that designation for the reasons described in the next above paragraph.

. . . .

. . . Hendon next attached to his Affidavit as Exhibit T a billing statement dated June 5, 1995 from my firm. It was presumably attached with the hope that the Court would draw some inference from the fact that the billing statement referred to TALP. That name appears on the file, since it was opened at a time when it was proposed that a partnership be formed under that name between Taylor and Buchheit for the purpose of investing in Valley, and a Certificate had been tendered to the Secretary of State.

. . . The client is identified at the top of the statement and in the case of our billing on this matter (Exhibit T) *the client is clearly identified as Taylor*, the individual, with no reference to TALP. If a partnership had come into being, then it would have been the client and, in the case of TALP, it would have been so reflected on the bill as the client. Our payment records reflect that payments for work done on this file were generally made through checks drawn against personal accounts in the name of Taylor or his wife. . . .

. . . .

. . . Hendon also attached another billing statement from our firm, as Exhibit V. Again this billing statement was directed to Taylor, individually, and not to TALP or any other entity.

Supplemental Aff. of Dudley W. Taylor ¶¶ 40–42, 53–54, 56.

Dudley Taylor also attempts to explain that K–1 tax statements were supplied by Taylor & Associates, L.P. as a substitute for 1099 forms because of tax reporting deadlines. In support of this explanation, Dudley Taylor filed on January 16, 1996, an Affidavit of Harold E. Elkins, the CPA that prepared the 1993 tax returns and statements for Joseph Taylor.[16] Mr. Elkins explains in his affidavit that Joseph Taylor initially asked him to prepare Form 1099s for the 1993 tax year, but Mr. Elkins declined because he had sold his accounting business and was bound by a noncompete agreement. Ultimately, Mr. Elkins prepared a Form 1065, U.S. Partnership Return of Income, and associated Form K–1s for Taylor & Associates, L.P. for the 1993 tax year. According to Mr. Elkins, these partnership tax forms were used as substitutes for the proper tax forms generally used to report investment activities of investors because Mr. Elkins had been led to believe that it was permissible to use the substitute forms. Mr. Elkins also states at paragraphs 24 and 25 in his affidavit that he attempted to make the tax forms look "as much like forms 1099 as reasonably possible," and "to simulate a form 1099 reporting."

Dudley Taylor also supports his theory that Form K–1s were used as substitutes for Form 1099s with affidavits from ten "investors"[17] filed January 16, 1996. The "investors" state in their affidavits that they were not partners in Taylor & Associates, L.P. However, under Tennessee law, "it is not essential that the parties actually intend to become partners." *Bass*, 814 S.W.2d at 41. At least four of the "investors," in addition to Mr. Elkins, also state in their affidavits that Joseph Taylor informed them that Form K–1s were used as substitutes for Form 1099s for expediency purposes. Aff. of Jane F. Campbell ¶ 10; Aff. of Carolyn C. Karnes ¶ 7; Aff. of Ron H. Mabry, D.C. ¶ 12; Aff. of Vickie Mabry ¶ 10. Lori Fleishman's affidavit filed January 16, 1996, also supports that Joseph Taylor used Form K–1s as substitutes for Form 1099s. However, at least one individual, William Gilley, who received a Form K–1 for 1993 and 1994, reported to the

May 5, 1995, evidencing conveyances involving "Joseph C. Taylor and Taylor & Associates, L.P."

**16.** Mr. Elkins was not involved in the preparation of the 1994 tax returns or statements for Joseph Taylor or Taylor & Associates, L.P.

**17.** These ten individuals are Jane F. Campbell, R. Wayne Culbertson, Harold E. Elkins, Robert L. Fannon, David Fugate, Carolyn C. Karnes, Vickie Mabry, Ron H. Mabry, D.C., John F. Miller, and Joanne M. Pierce.

IRS on his Schedule K–1 (Form 1065) for 1993 and 1994 that he was a limited partner of Taylor & Associates, L.P. The Form K–1s supplied to Mr. Gilley and attached to his affidavit filed December 15, 1995, report that he is a partner, report his partner tax identification number and the Taylor & Associates, L.P.'s tax identification number, report his "Partners Share of Income, Credits, Deductions, Etc.," and provide a "Partner Schedule M–2 Reconciliation." These "substitute" Form K–1s clearly evidence the existence of a limited partnership in which Mr. Gilley believed himself to be a limited partner.

The Memorandum attached to David Andrew's affidavit clearly sets forth that Dudley Taylor recognized Taylor & Associates, L.P. as a general partnership. However, Dudley Taylor explains in his supplemental affidavit and brief filed January 16, 1996, that the Memorandum was drafted at the request of David Andrew "in an effort to devise a theory" as to why Joseph Taylor had not disclosed the existence of Taylor & Associates, L.P. to Advanced Financial Planning Securities Corporation (AFP).[18] Supplemental Aff. of Dudley W. Taylor ¶ 89. Dudley Taylor implies at paragraphs 81 and 82 of his supplemental affidavit that Joseph Taylor stole a copy of the Memorandum from his office and provided it to David Andrew.

Dudley Taylor has also offered additional explanations and arguments to support his allegation that Taylor & Associates, L.P. is not a partnership. Despite Dudley Taylor's explanations and arguments, James Bush, the original petitioning creditor, has presented evidence to clearly and sufficiently establish that the business of Taylor & Associates, L.P. brought certain individuals "within the scope of a joint business," and those individuals placed "their money, assets, labor, or skill in commerce with the understanding that profits [would] be shared between them." *Bass,* 814 S.W.2d at 41. Furthermore, a Certificate of Limited Partnership was filed with the Tennessee Secretary of State on May 6, 1994, which establishes Taylor & Associates as a limited partnership. *See*

Tenn.Code Ann. § 61–2–201 (1989). Accordingly, the court finds that Taylor & Associates, L.P. is a limited partnership.

## V

■ The court rejects the following two additional theories relied on by Dudley Taylor in support of his motion to dismiss: (1) the Involuntary Petition was filed in bad faith; and (2) pursuant to Bankruptcy Code § 305(a)(1), dismissal is in the best interest of all parties. In support of his theory of bad faith, Dudley Taylor alleges in his January 16, 1996 brief that Mr. Bush, the original petitioning creditor, has a "questionable" claim against Taylor & Associates, L.P. for "investment fraud," and he should have known that twelve or more creditors existed and should have made reasonable inquiries to determine their existence. The court finds that sufficient evidence has not been presented to support these allegations. There is no evidence that the Involuntary Petition was filed in bad faith.

In support of the motion to dismiss, Dudley Taylor also relies on § 305 of the Bankruptcy Code, which provides in material part:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension. . . .

11 U.S.C.A. § 305(a)(1) (West 1993). Dudley Taylor alleges that if the Involuntary Petition is not dismissed, this court will be faced with "endless litigation with no reasonable assurance of recovery for any party" and that "any recovery that could be obtained [in bankruptcy court] could just as easily be pursued in state court." D. Taylor's Rebuttal Mem. of Law in Reply to Resp. to Mot. to Dismiss Involuntary Pet. at 53 n. 50. The court disagrees. The Bankruptcy Code provides protections to all creditors and the debtor that are unavailable in state court.

---

18. Dudley Taylor attached as Exhibit 3 to his January 16, 1996 supplemental affidavit a copy of an Associated Person Agreement entered into by AFP and Joseph Taylor on January 15, 1988, whereby Joseph Taylor became associated with AFP "as a registered representative licensed to offer and sell securities on [AFP's] behalf."

Furthermore, while some creditors might choose to proceed in state court if the Involuntary Petition is dismissed, recovery would likely be at the expense of other creditors. The court, therefore, finds Dudley Taylor's argument unpersuasive.

The Motion to Dismiss Involuntary Petition filed by Dudley W. Taylor and the Motion for Leave to Intervene in Motion to Dismiss Involuntary Petition filed by John F. Miller will be denied. An appropriate order will be entered.